In re POTOMAC SCHOOL OF
LAW, INC., Debtor.

FRED B. ROTHMAN & CO., Plaintiff,

v.

Nelson DECKELBAUM, Trustee for
Potomac School of Law, Inc.

and

West Publishing Company,

Irwin Sherwin,

Northern Virginia Van Company, Inc.

United States Department of the
Treasury, Internal Revenue
Service, Defendants.

Bankruptcy No. 81–00307.
Adv. No. 81–0167.

United States Bankruptcy Court,
District of Columbia.

Dec. 16, 1981.

Steven E. Vagle, Morgan Associates, Inc., Washington, D. C., for plaintiff Fred Rothman & Co.

Nelson Deckelbaum, trustee.

Leslie J. Greenberg, Baylinson, Kudysh & Greenberg, Washington, D. C., for West Pub. Co.

Michael Nussbaum, Nussbaum, Owen & Webster, Washington, D. C., for Irwin Sherwin.

Richard J. Stahl, Stahl, Stahl & Buck, Fairfax, Va., for North Virginia Van Co., Inc.

Mitchell R. Berger, Dept. of Justice, Washington, D. C., for U. S. Dept. of the Treasury (IRS).

## MEMORANDUM OPINION

(Priority of conflicting security
interests—8 Va.Code § 9–103,
and 28 D.C.Code § 9–312(6))

ROGER M. WHELAN, Bankruptcy Judge.

The sole issue remaining for resolution in connection with the pending adversary proceeding is a contest between two conflicting security interests asserted by Northern Virginia Van Company and West Publishing Company in collateral of Potomac Law School.[1] The facts necessary for resolution

---

1. This litigation originally arose as a result of an adversary proceeding instituted by Fred B. Rothman & Co. against Nelson Deckelbaum as trustee in bankruptcy, West Publishing Company, Irwin Sherwin, Northern Virginia Van Company, Inc., and the United States Department of the Treasury, Internal Revenue Service. Relief from the automatic stay (11 U.S.C. § 362(a)) was sought in order to allow the plaintiff, Rothman, as a secured creditor, to secure possession of its collateral located at the warehouse facilities of the defendant, Northern

of the pending conflict are essentially undisputed and largely a part of the court record. The sole legal issue pertains to the application of the provisions of Section 8.9–103 of the Virginia Code [2] which would require perfection of a security interest within four months that is "brought into and kept in this state." The Court must accordingly decide whether the collateral was in fact "brought into and kept in this state" within the meaning of the Virginia Code. Based on the reasons which will be more fully set forth in this opinion, this Court finds there was no removal within the meaning and intent of 8 Va.Code § 9–103, and therefore the priority of West Publishing Company is established within the priority section of 28 D.C.Code § 9–312.[3]

Virginia Van Company. The primary issue presented as a result of the plaintiff's proceeding involved the priority of conflicting security interests between the plaintiff Rothman and Northern Virginia Van Company based on an asserted warehouseman's lien arising under 8 Va.Code § 7–209. Secondary issues were, in turn, raised as to the priority of the government's tax lien, vis-a-vis, the asserted lien of the Northern Virginia Van Company and the final issue between West Publishing Co. and the Van Company which is the issue addressed in this opinion. The Rothman security interest (consisting of a security interest claimed against certain described legal periodicals) arose as a result of a security agreement and a financing statement filed on October 3, 1979. West Publishing Company's agreement and financing statement (which collateral did not include the Rothman collateral and accordingly no dispute arose between these two secured creditors) was filed on November 15, 1979, and the lien of the Internal Revenue Service arose on December 23, 1980, the date on which proper notice was given. *See* 26 U.S.C. § 6323(f). The remaining defendants, Irwin Sherwin and the trustee in bankruptcy, Nelson Deckelbaum, presented no argument or evidence in connection with the scheduled trial presumably because their separate respective interests are of marginal or no value in view of the prior security interests in the Rothman collateral and, accordingly, the court made no express findings with reference to these named parties.

At trial, on November 24, 1981, (see court orders entered November 24, 1981 and December 1, 1981) the court concluded that the prior perfected security interest of Rothman & Co. took priority over all subsequent interests by reason of the priority section set forth in 28 D.C.Code § 9–312. The court concluded that there was, based on the evidence of record, no valid warehouseman's lien in view of the fact that the documentation received and considered by the court did not comply with the requirement of 8 Va.Code § 7–209. This was concluded at the trial hearing as there was a failure to designate on the asserted warehouseman's receipt whether or not the document was negotiable or non-negotiable, among other reasons. It was clear that there was no intention to issue a warehouse receipt as such, but rather an intention to rely upon a perfected security interest pursuant to the mandates of Article 9 of the Uniform Commercial Code. In view of Rothman's prior filing, the plaintiff prevailed on the merits. Because the Government's priority position was predicated on the filing requirements of Section 6323(f) of the Internal Revenue Service Code, and further because Virginia Van Company was not in any way a party within the superpriority exceptions of Section 6323(b) through (e) of the Internal Revenue Service Code, the tax lien prevailed as to Northern Virginia Van Company's security interest, but was, in turn, subject to the prior perfected security interest of Rothman and West Publishing Company.

**2.** The pertinent provisions of Section 8.9–103 of the Virginia Code are as follows:

"This Section uses the concepts that goods are kept in a state or 'brought' into a state, and related terms. These concepts imply a stopping place of a permanent nature in this state, not merely transient or storage intended to be transitory."

**3.** 28 D.C.Code § 9–312(5) and (6) which parallels the Uniform Commercial Code provides:

"(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:

(a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under section 28:9–204(1) and whether it attached before or after filing;

(b) in the order of perfection unless both are perfected by filing, regardless of which security interest attached first under section 28:9–204(1) and, in the case of a filed security interest, whether it attached before or after filing; and

(c) in the order of attachment under section 28:9–204(1) so long as neither is perfected.

(6) For the purpose of the priority rules of the immediately preceding subsection, a continuously perfected security interest shall be treated at all times as if perfected by filing if it was originally so perfected and it shall be treated at all times as if perfected otherwise than by filing

West Publishing Company recorded a purchase money security interest financing statement with the D. C. Recorder of Deeds on November 15, 1979, which perfected its security interest in substantially all of the debtor's law library (excluding the Rothman collateral). The security interest of Northern Virginia Van Company arose on March 25, 1981, when a security agreement and financing statement was filed with the D. C. Recorder of Deeds. The Law Library, which was the collateral of the debtor, was moved from the Potomac Law School Library located in the District of Columbia and placed in storage with the Northern Virginia Van Company located in Virginia during the month of February, 1981. Northern Virginia Van filed its financing statement in Virginia during February, 1981. Potomac Law School, on June 5, 1981, filed a Chapter 11 petition under the Bankruptcy Code. The debtor-in-possession continued business operations as a debtor in possession until June 24, 1981, when a Trustee was appointed by order of this Court.

As pointed out in the Northern Virginia Van Company's memorandum of law, Section 8.9–103 of the Virginia Code, states:

"(1) Documents, instruments and ordinary goods . . .

(d) When collateral is brought into and kept in this State while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,

if it was originally perfected otherwise than by filing. (Dec. 30, 1963, 77 Stat. 758, Pub.L. 88- 243, § 1; 1973 Ed., § 28:9–312.)"

4. In fact, Northern Virginia Van Company's memorandum specifically states in its opening paragraph:

"At the time Van Company took possession of the law library belonging to the Potomac School of Law, Inc., it was given no period of time during which it would be the responsibility of the school's law library. It was known that it would not be of short duration. At the time the law school was attempting to improve its financial situation,

(i) If the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, which ever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;

(ii) If the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter . . ."

In determining whether the storage which took place in this case was "intended to be transitory" the Court can only conclude that the facts of record do not in any way indicate that the storage was other than transitory. In February, 1981, at the time the library was placed in storage, the law school had moved from its original law school location at 2600 Virginia Avenue, N.W. to new quarters at 1820 Jefferson Place, N.W. When the Chapter 11 case was filed in June 1981, the law school had not yet terminated its business affairs (see statement of affairs 1–B). It is clear to the court, based on these facts, that at the time the goods were removed and during the period of time up to the filing of the Chapter 11 in June of 1981, the storage was and could only be concluded as transitory in nature. It is further clear from the facts that the law school had no expressed intention of terminating its business operations during the months of January through June 1981, and accordingly the storage of the law library was effected with reference to its then continuing business operations.[4]

it was also looking for new quarters. The storage of the law library was not thought to be a short stay."
The fact that the storage was of arguably indefinite duration and not a "short stay" is inaccurate with reference to the intent of Potomac Law School to attempt to carry on its business operations. Admittedly, the law school had changed its location and had not in any way evidenced a permanent cessation of business, and accordingly, the operations of the law school in this context were, of necessity, vital in connection with the maintenance of its law library—even though said library was temporarily in storage.

Accordingly, the only logical conclusion that can be drawn from such facts is that the removal and storage of the collateral was intended to be and was, in fact, of a transitory nature. Based on facts already referred to in the Statement of Affairs, it is clear that a law library is a necessary adjunct to the continued operations of the law school, and because the law school had admittedly not terminated its business operations in February, 1981, there can obviously be no conclusion drawn with reference to any aspect of removal in a permanent sense. The mere fact that the storage was not of a short duration does not detract in any way from the Court's factual findings in this matter.

Based on the fact that 8.9–103 of the Virginia Code is inapplicable to the question of priority, the ultimate issue of priority is properly determined by the "order of filing" as set forth in 28 D.C.Code 9–312(5).[5]

Accordingly, because the security interest of West Publishing Company was perfected first, in accordance with the requirements of 28:9–312(5) of the D.C.Code, West is awarded priority over the conflicting security interest in Northern Virginia Van Company.

---

**5.** 28 D.C.Code 9–312(5) provides:

"(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:

(a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under section 28:9–204(1) and whether it attached before or after filing;

(b) in the order of perfection unless both are perfected by filing, regardless of which security interest attached first under section 28:9–204(1) and, in the case of a filed security interest, whether it attached before or after filing; and

(c) in the order of attachment under section 28:9–204(1) so long as neither is perfected.