In re VIDEO EAST, INC., Debtor.

RCA CORPORATION, Plaintiff,

v.

VIDEO EAST, INC., Defendant.

Bankruptcy No. 81–05417G.
Adv. No. 83–1048G.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 13, 1984.

Michael S. Lubline, Fell & Spalding, Philadelphia, Pa., for plaintiff, RCA Corp.

Bernard M. Berman, Media, Pa., and Mary F. Walrath, Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for debtor, Video East, Inc.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

Three predominant issues are presented in the case at bench, the first of which is whether a creditor's security interests in equipment are unperfected pursuant to 13 Pa.Cons.Stat. § 9103(a)(4) of the Uniform Commercial Code ("UCC") of Pennsylvania. The second issue is whether we should avoid a creditor's security interest under 11 U.S.C. § 506 of the Bankruptcy Code ("the Code") on the averment that the amount of the secured claim exceeds the value of the collateral. And finally, we must determine if we should grant a creditor's request for relief from the automatic stay in order to permit foreclosure on the debtor's collateral. On the first issue we find the security interests are unperfected and on the second issue we will avoid that security interest in part. We will grant the request for relief from the stay on the third issue.

The facts of this case are as follows:[1] An involuntary petition for relief under chapter 7 of the Code was filed against the debtor on December 31, 1981. The debtor failed to controvert the petition, relief was entered, and thereafter the case was converted to a chapter 11 proceeding at the debtor's request. RCA Corporation ("RCA") commenced the action at bench seeking relief from the automatic stay on the basis that the debtor was in default on a purchase money financing agreement under which the debtor had purchased the equipment. On receipt of said equipment, the debtor promptly installed it in the company van. The debtor contended that RCA was not entitled to relief from the stay on the alternative theories that RCA's security interests in numerous pieces of equipment in the van were not perfected and that RCA's interest in the remainder of the collateral, which was subject to a perfected security interest, was adequately protected. The debtor counterclaimed, seeking the avoidance of the unperfected security interests under 11 U.S.C. § 544(a) and the avoidance of the perfected security interest under 11 U.S.C. § 506 to the extent that the indebtedness exceeded the fair market value of the goods.

Prior to the filing of the petition in bankruptcy, the debtor was in the business of filming and videotaping various sports events on the East Coast. The debtor purchased video equipment from RCA on credit under four security agreements. After its installation in the van, the equipment was transported in the vehicle to various filming sites. When the debtor's business began in 1979, the van was garaged in a leased facility in Camden, New Jersey. At that time the debtor's headquarters were located on Vassar Road, Strafford, Chester County, Pennsylvania, in a spare room in the home of one of the debtor's principals, one Henry H. Briggs, III ("Briggs"). Due to the expansion of the business, the debtor moved its offices in February of 1980 to North Gulph Road, King of Prussia, Montgomery County, Pennsylvania, and ceased conducting business in Chester County. In July of 1981 further expansion caused the debtor to move from North Gulph Road to

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

Fifth Avenue, King of Prussia, Montgomery County, Pennsylvania. With that move the van was no longer housed in Camden, but it was "brought into and kept" at the Fifth Avenue address in Pennsylvania and garaged there.

The parties are in agreement that all merchandise sold under the security agreements was "equipment" within the meaning of the UCC of Pennsylvania and New Jersey and that the security interest on the goods purchased under the fourth security agreement was perfected. On their last major point of agreement the parties concur that the goods delivered under the first three security agreements were perfected when those goods were delivered to the debtor's garage in New Jersey.

Goods purchased under the first three agreements were received prior to May of 1981 and these goods were delivered to Camden and placed in the van. Financing statements for each of these purchases were filed in the appropriate state-wide filing locations for New Jersey and Pennsylvania (Trenton and Harrisburg) and in the duly authorized local offices in Camden County, New Jersey and Chester County, Pennsylvania. Goods purchased under the fourth security agreement which, accord-

ing to the evidence, have a value of $24,-000.00, were received in May of 1981 at North Gulph Road in Montgomery County, Pennsylvania. Financing statements were filed in Pennsylvania's state-wide filing office in Harrisburg as well as in the Pennsylvania counties of Delaware, Montgomery and Chester.

Although the merchandise was initially perfected under New Jersey's UCC, the debtor contends that RCA's failure to file the requisite financing statements in Pennsylvania after the debtor purportedly began housing the van in Pennsylvania, caused the security interests to lapse in accordance with Pennsylvania's UCC. Since this is a multiple state transaction under Article 9 of the UCC, we have quoted below the relevant provision of Pennsylvania's UCC: § 9103.[2] 13 Pa.Con.Stat. § 9103. Since the merchandise delivered to the van was goods other than minerals, mobile goods or goods covered by a certificate of title, § 9103 applies to the facts of the case at bench. § 9103(a)(1). Except as otherwise provided in § 9103, § 9103(a)(2) indicates that New Jersey's UCC would govern this case since the last event giving rise to the alleged security interest in the

**2.** § 9103. Perfection of security interests in multiple state transactions

(a) Documents, instruments and ordinary goods.—

(1) This subsection applies to documents and instruments and to goods other than those covered by a certificate of title described in subsection (b), mobile goods described in subsection (c) and minerals described in subsection (e).

(2) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.

(3) * * *

(4) When collateral is brought into and kept in this Commonwealth while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Chapter 93 (relating to rights of third parties; perfected and unperfected security interests; rules of priority) to perfect the security interest:

(i) if the action is not taken before the expiration of the period of perfection in the

other jurisdiction or the end of four months after the collateral is brought into this Commonwealth, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;

(ii) if the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter; and

(iii) for the purpose of priority over a buyer of consumer goods (section 9307(b), the period of the effectiveness of a filing in the jurisdiction from which the collateral is removed is governed by the rules with respect to perfection in subparagraphs (i) and (ii).

\*　\*　\*　\*　\*　\*

Although certain amendments were made to various sections of the UCC on November 26, 1982, under the facts of this case the alterations have effected no substantial change in the law, and thus we quote the UCC as it is currently worded.

equipment occurred in that state. Nonetheless, § 9103(a)(4), in conjunction with § 9302 of chapter 93, provides that a secured party must file the appropriate financing statements in Pennsylvania if the security interest is to continue perfected more than four months after the equipment is "brought into and kept in" Pennsylvania.

■ The first issue we must address is whether the equipment was "brought into and kept" in Pennsylvania so as to necessitate the filing of financing statements in accordance with Pennsylvania's UCC. We stated above that equipment was, in fact, "brought into and kept" in this state when the van was first housed in the garage in King of Prussia, Pa., rather than in Camden. At that time the van and the equipment contained in it, were clearly "brought" into Pennsylvania and we conclude that occasional conveyance of the equipment in the van to neighboring states for filming did not preclude the determination that the equipment was "kept" in Pennsylvania. *See, e.g., In Re Bob Schwermer & Assoc., Inc.*, 27 B.R. 304 (Bankr.N.D.Ill.1983) (race horses which were deemed equipment under the UCC were "kept" in the state where horses were customarily maintained within the meaning of § 9–103 and thus remained the subject of a continuously perfected security interest notwithstanding the transportation of the horses to race tracks in other states);

*Rothman v. Deckelbaum (In Re Potomac School of Law, Inc.)*, 16 B.R. 102 (Bankr. D.D.C.1981) (movement of collateral from state where goods had been utilized and perfected to another state for temporary storage did not preclude determination that goods were "kept" in state where they had used before transitory movement).

■ The second issue we must resolve is whether the debtor had "a place of business in only one county" in Pennsylvania, since this will determine whether RCA filed financing statements in the proper locations for perfection of its security interest. The parties have agreed on the general proposition that perfection of a security interest in equipment which is not used in farming operations requires the filing of financing statements in accordance with 13 Pa.Cons.Stat. § 9401(a)(3).[3] This provision states that a financing statement must be filed with the "Secretary of the Commonwealth and in addition, if the debtor has a place of business in only one county of this Commonwealth, also in the office of the prothonotary [clerk of the county court] of such county...." "A filing which is made in the proper county continues effective for four months after a change to another county of the residence of the debtor or place of business or the location of the collateral, whichever controlled the original filing." § 9401(c). Financing statements for the collateral sold under the first three

---

**3.** § 9401. Place of filing; erroneous filing; removal of collateral

(a) *Place of filing.*—The proper place to file in order to perfect a security interest is as follows:

＊　　＊　　＊　　＊　　＊　　＊

(3) In all other cases, in the office of the Secretary of the Commonwealth and in addition, if the debtor has a place of business in only one county of this Commonwealth, also in the office of the prothonotary of such county, or, if the debtor has no place of business in this Commonwealth, but resides in the Commonwealth, also in the office of the prothonotary of the county in which he resides.

(b) *Effect of partially valid filing.*—A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this division and is

also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

(c) *Effect of change in location of debtor or collateral.*—A filing which is made in the proper county continues effective for four months after a change to another county of the residence of the debtor or place of business or the location of the collateral, whichever controlled the original filing. It becomes ineffective thereafter unless a copy of the financing statement signed by the secured party is filed in the new county within said period. The security interest may also be perfected in the new county after the expiration of the four-month period; in such case perfection dates from the time of perfection in the new county. A change in the use of the collateral does not impair the effectiveness of the original filing.

＊　　＊　　＊　　＊　　＊　　＊

security agreements were filed with the Secretary of the Commonwealth and in Chester County, yet none were filed in Montgomery County. RCA contends that when the debtor began housing the van in Montgomery County, thus necessitating RCA's perfection of its security interest under Pennsylvania law, the debtor continued to conduct business at Briggs's home in Chester County as well as in Montgomery County. RCA raised several points in support of its allegation, the first of which is that although the debtor's business phone had been removed from Briggs's home when the debtor moved from that home to North Gulph Road, Briggs continued to use his personal home phone after normal business hours to make and receive emergency calls on behalf of the debtor. The debtor's second point is that entities that did not realize that the debtor had moved from Briggs's home continued to send correspondence to the debtor at that address notwithstanding the debtor's reasonable efforts to inform these entities that the debtor's place of business had changed. RCA's third point is the debtor's continued use of Briggs's address for vehicle registration and insurance. Its fourth is the debtor's use of business forms after having moved to Montgomery County which still bore Briggs's home address. In opposition to RCA's contentions, the debtor marshalled evidence establishing that, when the business moved to North Gulph Road in February of 1980, all the books, records and files were moved to the new address. The debtor's business phone at Briggs's home was disconnected, a change of address card was filed with the post office, new letterheads bearing the new address were ordered and customers were notified by telephone of the change of address. Based on this evidence we have made the factual conclusion that the debtor ceased doing business at Briggs's home when the debtor moved to North Gulph Road. Consequently, at no time did the debtor have a place of business in more than one county. Thus, RCA's security interest in the equipment lapsed four months after the debtor began housing the van in Montgomery County, Pa., since RCA failed to file a financing statement in that county. *Lampl v. General Electric Credit Corp.* (*In Re B & L Coal Co., Inc.*), 20 B.R. 864 (Bankr.W.D.Pa.1982) ("[T]he term 'place of business' refers to a place where customers and creditors would normally communicate with the debtor for purposes of trade" and in this case did not include the debtor's home, notwithstanding the fact that the debtor and his wife performed "certain office work" at said home. 20 B.R. at 867).

■ The third issue we must address is whether RCA's proper filing of financing statements on the fourth security agreement afforded sufficient notice to creditors that they should inquire about the existence of other security interests. RCA is apparently relying on § 9401(b) which states, "A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless ... effective ... with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement." The advisory committee notes indicate that this provision is effective only when the creditor "actually knows the contents of the improperly filed statement." The financing statement filed for the fourth security agreement stated as follows:

> Equipment of a type usable in connection with television/radio broadcasting and receiving or usable in the production of television/radio programs, (whether or not to become fixtures), sold by RCA Corporation to the debtor under Contract Number BCD–11826–B, and including all accretions, additions, accessories, replacements and substitutions thereto and therefor and the proceeds thereof. .

A creditor searching the UCC files would find the subject collateral listed as television/radio broadcasting equipment sold under contract BCD–11826–B. The equipment sold under the first three security agreements was of the same type of television/radio broadcasting equipment although the financing statements on these

agreements each bore different contract numbers. RCA asserts that a creditor finding the financing statement filed to effect the fourth security agreement would necessarily contact RCA to establish what equipment was sold under contract number BCD–11826–B, and during such contact would be informed by RCA of the existence of the other three security interests. We find that RCA failed to prove by a preponderance of the evidence that a hypothetical creditor searching the UCC files and finding the financing statement on the fourth security agreement would inquire at RCA about contract number BCD–11826–B and would necessarily be apprised by RCA of the three other security agreements that were improperly filed. Since the debtor in possession has the status of a hypothetical lien creditor without regard to any knowledge of the trustee, the debtor in possession[4] or any creditor,[5] the security interests arising under the first three security

agreements are not valid against the debtor. Since the debtor has counterclaimed for the avoidance of these unperfected security interests under 11 U.S.C. § 544(a), we will grant that relief since it is clearly appropriate.

Pursuant to § 506(a)[6] and (d) the debtor seeks to avoid RCA's security interest in goods covered by the fourth security agreement to the extent the indebtedness under that agreement exceeds the fair market value of the equipment. We stated above that the fair market value of the equipment in question is $24,000.00 while the debt is in excess of $70,000.00. Consequently, we will avoid the security interest to the extent it exceeds $24,000.00.

■ Lastly, we must consider RCA's request for relief from the automatic stay. Since we avoided RCA's unperfected security interest in the goods identified in the first three security agreements, RCA's re-

---

4. § 1107. Rights, powers, and duties of debtor in possession
(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

\* \* \* \* \* \*

5. § 544. Trustee as lien creditor and as successor to certain creditors and purchasers
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

\* \* \* \* \* \*

6. § 506. Determination of secured status
(a) An allowed claim of a creditor secured by a line on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

\* \* \* \* \* \*

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or
(2) such claim was disallowed only under section 502(e) of this title.

quest for relief from the stay as to these items is without merit. RCA's request for relief as to the items denominated in the fourth security agreement is colorable since the amount of the debt and the value of the security are equal. Excluding an insurance payment made to RCA due to the destruction of one item of collateral, the debtor has made no payments on the indebtedness for at least twenty-four months. The debtor asserts that RCA's security interest is adequately protected due to RCA's status as a loss payee on certain insurance policies covering the equipment and provisions in the debtor's unconfirmed plan which contains provisions authorizing repayment of the debt to RCA. The presence of the term "including" in § 362(d)(1)[7] indicates that "lack of adequate protection" is not the exclusive means of obtaining relief under that provision. Even assuming that the debtor has afforded RCA adequate protection on the basis averred,—although we doubt that it has,—the presence of adequate protection will not bar a creditor from successfully seeking relief under § 362(d)(1) for some other "cause." We have held that the "continued failure to tender periodic payments to a secured creditor pursuant to the terms of an underlying debt can constitute 'cause' for relief under § 362(d)(1) ...." *Royal Bank of Pennsylvania v. Three Tuns, Inc.*, (*In Re Three Tuns, Inc.*), 35 B.R. 110, 111 (Bankr.E.D.Pa.1983) (*See* cases collected at 35 B.R. 111, n. 2); *Ukrainian Savings and Loan Assoc. v. Trident Corp.*, 22 B.R. 491, 495 (E.D.Pa.1982). On this basis we will grant RCA relief from the automatic stay as to the goods listed in the fourth security agreement and we will enter an order accordingly.

7. § 362. Automatic Stay
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.