836 F.2d 184
 Bankr. L. Rep. P 72,160, 5 UCC Rep.Serv.2d 501
GENERAL ELECTRIC CREDIT CORPORATION
v.
NARDULLI & SONS, INC. and Carlota Bohm, Trustee.
Appeal of Carlota M. BOHM, Trustee of the Estate of Nardulli
& Sons, Inc. and Nardulli & Sons, Inc., Appellants
(Two Cases).
KEYSTONE ACCEPTANCE CORPORATION
v.
NARDULLI & SONS CO., INC. and Carlota M. Bohm, Trustee.
 Nos. 87-3079, 87-3155.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 14, 1987.
Decided Jan. 6, 1988.
 
 Carlota M. Bohm (argued), Schaffler and Bohm, Pittsburgh, Pa., for appellants on Nos. 87-3079, 87-3155.
 Stephen J. Laidhold (argued), Lampl, Sable, Makoroff and Libenson, Pittsburgh, Pa., for appellee on No. 87-3079.
 J. Kent Culley, Beverly Weiss Manne (argued), Tucker Arensberg, P.C., Pittsburgh, Pa., for appellee on No. 87-3155.
 Before BECKER, SCIRICA, Circuit Judges and FARNAN, District Judge.*
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 The primary issue in this appeal is whether the Chapter 11 plan of reorganization of appellant Nardulli and Sons Co., Inc. (Nardulli) divested security interests in equipment, granted by Nardulli to appellees General Electric Credit Corporation (GECC) and Keystone Acceptance Corporation (Keystone). We hold that the plan did not divest GECC or Keystone of their respective security interests; in fact it preserved those security interests.
 
 
 2
 The second issue that we decide is whether GECC and Keystone lost their secured positions because they did not file financing statements, as required by the Pennsylvania and Indiana Uniform Commercial Codes (U.C.C.), within four months after Butler County, Pennsylvania became Nardulli's sole place of business, or within four months after Nardulli moved to Indiana equipment in which GECC and Keystone had validly perfected security interests. We hold that GECC and Keystone's failure to file financing statements in those states did not divest them of their perfected security interests in the equipment, at least with respect to Nardulli's claim.
 
 
 3
 Finally, we must decide whether the trustee, as a hypothetical lien holder under 11 U.S.C. Sec. 544, has rights superior to those of GECC and Keystone as lienholders, with respect to equipment in which they had security interests that were perfected prior to the commencement of the bankruptcy proceedings, but for which no continuing statements were properly filed. We hold that the rights of GECC and Keystone as lienholders are superior to those of the trustee as a hypothetical lienholder because the trustee inherited its powers as of the time of the original bankruptcy filing, when the creditors' liens were perfected.
 
 
 4
 We review the bankruptcy court's findings 66 B.R. 871, by the standard the district court was bound to employ. Factual disputes, although none exist here, are governed by the clearly erroneous standard. Our review of the choice, interpretation or application of legal precepts is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir.1981); see also In re McKeesport Steel Castings Co., 799 F.2d 91, 93 (3d Cir.1986) (quoting Universal Minerals ).
 
 I. Facts
 
 5
 In October 1979, GECC loaned Nardulli $448,749.72 and obtained security interests in five pieces of strip mining equipment. Between 1977 and 1979 Nardulli entered into nine similar transactions with L.B. Smith for loans totalling $503,145.43. These transactions were supported by promissory notes and sales-security agreements and later were assigned by Smith to Keystone Acceptance Corporation. Keystone thereby acquired security interests in twenty-one (21) pieces of equipment. Both GECC and Keystone duly perfected their respective security interests by properly filing financing statements pursuant to 13 Pa.Cons.Stat. Secs. 9302, 9401-03 (1982).
 
 
 6
 On October 22, 1980, Nardulli filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania.[1] In an Order dated July 29, 1981, the bankruptcy court approved a stipulation between Nardulli and GECC that affirmed GECC's validly perfected security interest in the five pieces of equipment and authorized Nardulli to grant GECC a security interest in a sixth piece of equipment. General Electric Credit Corp., Joint Appendix at 125a-28a [hereinafter "GECC J.A."]. GECC then filed the required financing statement for the sixth piece of equipment. Similarly, in an October 7, 1981 order, the bankruptcy court approved a stipulation between Nardulli and Keystone that affirmed the validity of Keystone's perfected security interest in the twenty-one pieces of equipment and authorized Nardulli to grant Keystone security interests in specified additional equipment. Keystone Acceptance Corp., Joint Appendix at 125a-28a [hereinafter "Keystone J.A."]. Keystone did not file financing statements with respect to this additional equipment.[2]
 
 
 7
 In March 1982, Nardulli established an office in Butler County, Pennsylvania which it maintained until January, 1986. Between July, 1984 and January, 1986, Butler County was Nardulli's only place of business. In 1983, Nardulli moved some equipment in which GECC and Keystone had security interests to Butler County and moved other equipment in which Keystone had a security interest to Indiana. In 1984, Nardulli also moved some equipment in which GECC had a security interest to Indiana. Neither GECC nor Keystone filed financing statements in Butler County, Pennsylvania or Indiana.
 
 
 8
 The bankruptcy court, in a November 29, 1983 order, confirmed Nardulli's Chapter 11 plan of reorganization. The plan provided a schedule for payment of the debts owed by Nardulli to GECC and Keystone. It did not expressly divest GECC or Keystone of their respective security interests in the equipment. Indeed, the only references in the plan to these security interests provided that if any asset in which GECC or Keystone had a security interest was sold, the monthly payments due them would be reduced by the same proportion as any sale proceeds they realized bore to the total balance due.
 
 
 9
 After the plan was confirmed, Nardulli leased the equipment located in Indiana to the Whole Nine Yards Coal Company, which, according to the lease, serviced, maintained and repaired the equipment. The Whole Nine Yards Company also placed an Indiana artisan's lien on the equipment. In June, 1986, the trustee, at a bidding sale, sold the equipment to Whole Nine Yards Co. for $250,000, payments to be made in installments.[3]
 
 II. Procedural History
 1. GECC
 
 10
 Claiming security interests in six pieces of equipment owned by Nardulli, GECC filed a complaint in the United States Bankruptcy Court for reclamation of property, adequate protection and/or relief from stay. (GECC J.A. at 146a). The trustee contested that GECC had validly perfected security interests. (GECC J.A. at 175a). Subsequently, the bankruptcy court held that upon confirmation of the plan, GECC's security interests were divested. (GECC J.A. at 242a). Citing 11 U.S.C. Sec. 1141(d)(1), the bankruptcy court stated that unless otherwise provided in the plan, confirmation of a reorganization plan discharges the debtor from any debt that arose before the confirmation date.
 
 
 11
 Alternatively, the bankruptcy court held that even if the plan did not divest GECC of its security interests, GECC's failure to file financing statements in Butler County, Pennsylvania and Indiana resulted in the loss of its perfected status. The court found inapplicable the Pennsylvania U.C.C.'s provision exempting secured creditors from filing continuation statements to preserve a perfected security interest during insolvency proceedings.[4] The court also held that the insolvency proceedings terminated on December 29, 1983--the plan's consummation date. Therefore, under Sec. 9403(b), which grants an exemption from filing during the pendency of insolvency proceedings and up to sixty days thereafter, GECC was required to file continuation statements at the specified intervals after December 29, 1983. Furthermore, the court held that when a debtor moves its place of business to another county or moves collateral to another state, the Sec. 9403(b) exemption is inapplicable even during insolvency proceedings. Consequently, GECC's failure to file financing statements in Butler County resulted in the loss of GECC's security interests.
 
 
 12
 The bankruptcy court also held that GECC lost its secured status on equipment that Nardulli moved to Indiana, because it failed to file financing statements within four months of the move, as required by the Indiana U.C.C.[5]
 
 
 13
 The district court vacated the bankruptcy court's order and rejected its findings of fact as clearly erroneous. The district court held that GECC has perfected security interests in the six pieces of equipment pursuant to 13 Pa.Cons.Stat. Sec. 9403(b) (1982). This appeal followed.
 
 2. Keystone
 
 14
 Keystone also filed a complaint in the United States Bankruptcy Court for a determination of the validity of its liens, and to direct the trustee to turn over proceeds from the sale of equipment in which Keystone had a perfected security interest. (Keystone J.A. at 210a). The bankruptcy court held that the plan did not expressly provide for retention of Keystone's security interest, and even if it did, Keystone did not comply with the filing requirements of the Uniform Commercial Code of Pennsylvania and Indiana. Consequently, Keystone lost its security interests. The court found that termination of the bankruptcy proceedings occurred on December 29, 1983 and that sixty days thereafter Keystone was once again subject to the filing requirements of the Pennsylvania U.C.C. Because Keystone failed to file financing statements in Butler County, Pennsylvania and Indiana after the expiration of the Sec. 9403(b) exemption, it lost its security interest.
 
 
 15
 On appeal, the district court found that the insolvency proceedings were not yet terminated. It reversed the decision of the bankruptcy court and reinstated the liens held by Keystone. This appeal followed.
 
 III. Discussion
 1. The Plan
 
 16
 Appellants contend that because the plan did not expressly preserve the creditors' security interests, upon confirmation of the plan, Nardulli possessed the equipment free and clear of all claims.
 
 
 17
 11 U.S.C. Sec. 1141 provides in relevant part:
 
 
 18
 (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
 
 
 19
 (c) After confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, of equity security holders, and of general partners in the debtor, except as otherwise provided in the plan.
 
 11 U.S.C. Sec. 1141(b), (c) (1982).[6]
 
 20
 Resolution of this dispute requires an examination of Nardulli's Chapter 11 plan. Article I, Part B of the plan is entitled "Provision for the Treatment of Secured Creditors." Part B, Section 1 establishes a payment schedule under which the debtors, including Nardulli,[7] will pay GECC, the sole Class 1 claimant. In that same section, the plan provides that "[i]f any asset in which GECC has a security interest is sold, the monthly payments shall be reduced in the same proportion as the proceeds of sale realized by GECC bear to the total balance due GECC." (GECC J.A. at 137a; Keystone J.A. at 174a). Similarly, Part B, Section 2 contains a payment schedule and identical sale provision applicable to Keystone, the sole Class 2 claimant. (GECC J.A. at 138a; Keystone J.A. at 174a). We conclude that these provisions sufficiently preserved the security interests of both GECC and Keystone.
 
 
 21
 Although the plan does not explicitly state that the security interests of GECC and Keystone are preserved, it expressly acknowledges the continued existence of their respective security interests. Furthermore, that acknowledgement is implicit in the inclusion of schedules for payment to GECC and Keystone, in the part of the plan entitled "Provision for Treatment of Secured Creditors."
 
 
 22
 Our conclusion is bolstered by reference to Nardulli's disclosure statement submitted pursuant to 11 U.S.C. Sec. 1125(b). That section requires a debtor, before or at the time of soliciting approval of the debtor's plan of reorganization from a holder of a claim or interest, to submit a written disclosure statement containing adequate information to allow a reasonable holder to make an informed judgment about the plan. 11 U.S.C. Sec. 1125(a)(1) & (b) (1982 & Supp. II 1984). In its disclosure statement, Nardulli stated that creditors in Classes 1 through 8, which includes GECC and Keystone, "are all secured creditors with security interests in certain items of equipment of Debtors." If the plan intended to divest GECC and Keystone of their security interests, this explicit recognition of the secured status of both GECC and Keystone would have contradicted the statutory mandate that a disclosure statement contain information sufficient to allow an informed decision about the plan. We do not suggest, however, that recognition of GECC and Keystone as secured creditors in the disclosure statement is essential to our holding, or that alone it would be sufficient to support our conclusion. Indeed, our holding is that the plan itself sufficiently preserved the liens of GECC and Keystone.
 
 
 23
 We recognize that 11 U.S.C. Secs. 1141(b) and (c) do not require that the plan expressly divest creditors of their security interests. Indeed, the plan must provide for retention of those interests in order for them to survive confirmation.[8] 11 U.S.C. Sec. 1141(b) & (c) (1982). We interpret the plan's reference to GECC and Keystone as secured creditors as a recognition of the continued validity of their previously perfected security interests.
 
 
 24
 We also find compelling that the plan provides for a proportionate reduction of payments upon sale of assets in which GECC or Keystone has a security interest. The plan therefore acknowledges that even after the confirmation of the plan, GECC and Keystone will have secured status.
 
 
 25
 We conclude therefore that the plan preserved the perfected security interests of GECC and Keystone in the equipment.
 
 2. Filing requirements
 
 26
 Appellants contend that even if the plan preserved the security interests, appellees lost their secured status by not filing financing statements in Butler County, Pennsylvania and Indiana after termination of the insolvency proceedings. The bankruptcy court agreed and held that upon conversion to a Chapter 7 proceeding, the trustee, pursuant to 11 U.S.C. Sec. 544, had an interest as a hypothetical lien creditor superior to the interests of both GECC and Keystone.
 
 
 27
 The district court, in two separate orders, reversed. It held that GECC had a validly perfected security interest in the five pieces of equipment pursuant to the October 1979 security agreement with Nardulli, and in a sixth piece of equipment pursuant to a stipulation with Nardulli that was approved by the bankruptcy court on July 29, 1981. Similarly, the district court reinstated and validated Keystone's liens that were in existence prior to October 22, 1980, the initiation of bankruptcy proceedings. We affirm. We also hold that because both GECC and Keystone complied with the filing requirements of the Pennsylvania Uniform Commercial Code as of the date of filing the bankruptcy petition, their rights as lienholders are superior to those of the trustee as a hypothetical lienholder under 11 U.S.C. Sec. 544.
 
 
 28
 We now consider the filing requirements of the Pennsylvania U.C.C. A security interest perfected by filing prior to the commencement of insolvency proceedings remains perfected until sixty days after termination of the insolvency proceedings or five years from the filing date of the financing statement, whichever is later. 13 Pa.Cons.Stat. Sec. 9403(b). As of October 22, 1980, the date Nardulli filed its voluntary petition in bankruptcy, GECC and Keystone had properly filed financing statements pursuant to 13 Pa.Cons.Stat. Secs. 9302, 9401-03 (1982). Furthermore, GECC filed the financing statements required to perfect the security interest in the sixth piece of equipment. During the pendency of the insolvency proceedings, therefore, GECC and Keystone did not have to file continuation statements for this equipment. 13 Pa.Cons.Stat. Sec. 9403(b).
 
 
 29
 Insolvency proceedings terminate upon confirmation of a plan of reorganization, or on the effective date or consummation date of the plan, if provided for in the plan. See 11 U.S.C. Sec. 1141(a) (1982). Under Nardulli's plan, the consummation date was thirty days after the bankruptcy court's order of confirmation, which was November 29, 1983. After December 29, 1983, therefore, the Sec. 9403(b) exemption no longer applied to GECC and Keystone.
 
 
 30
 For the reasons discussed below, we hold that the failure to file continuation statements after December 29, 1983 did not divest perfected liens as against Nardulli, although it would have divested priority over subsequent creditors of Nardulli or subsequent purchasers of the equipment, such as the Whole Nine Yards Co.
 
 
 31
 A. Equipment located in Butler County, Pennsylvania
 
 
 32
 In October, 1979, GECC originally perfected security interests in five pieces of equipment by filing financing statements with the Secretary of the Commonwealth of Pennsylvania and the Prothonotary of Allegheny County, Pennsylvania. (GECC J.A. at 164a-68a). In September, 1981, GECC filed a financing statement on the sixth piece of equipment. (GECC J.A. at 170a and 172a). On April 23, 1984, GECC filed continuation statements with the same offices. Similarly, Keystone perfected security interests in twenty-one pieces of equipment by filing financing statements in 1977, 1978 and 1979 with the proper offices. (Keystone J.A. at 406a-24a).
 
 
 33
 Nardulli had places of business in Allegheny County, Pennsylvania from 1940 until October, 1983; in Washington County, Pennsylvania from 1971 until June, 1984; and in Butler County, Pennsylvania from March, 1982 until January, 1984. (See Affidavit of James A. Nardulli, President of Nardulli, GECC J.A. at 185a-86a). From June, 1984 until January, 1984, Nardulli's only place of business was in Butler County, Pennsylvania.
 
 
 34
 Under the Pennsylvania U.C.C., a properly filed financing statement remains effective for four months after a debtor changes his place of business to another county. After four months, failure to file a financing statement in the new county renders a previous filing ineffective. 13 Pa.Cons.Stat. Sec. 9401(c). Within four months of June 1984, GECC and Keystone should have filed in Butler County a signed copy of the financing statements previously filed with the Secretary of the Commonwealth and the Allegheny County Prothonotary. Neither complied. Appellants argue that noncompliance divested the liens on the equipment located in Butler County. We disagree. We hold that neither GECC nor Keystone lost its security interest in the equipment located in Butler County as between themselves and Nardulli.
 
 
 35
 We now examine the purpose for the filing requirements of the Uniform Commercial Code. The U.C.C.'s filing requirement intended to put future creditors and subsequent purchasers of the collateral on notice of the lien. Industrial Packaging Products Co. v. Fort Pitt Packaging International, Inc., 399 Pa. 643, 648, 161 A.2d 19, 21 (1960); Casterline v. General Motors Acceptance Corp., 195 Pa.Super. 344, 351, 171 A.2d 813, 814 (1961). Because Nardulli is not a subsequent purchaser or creditor, unlike Whole Nine Yards Co., it may not take advantage of GECC and Keystone's failure to file. In re McGovern Auto Specialty, Inc., 51 B.R. 511, 512 (E.D.Pa.1985). In reaching this decision, we rely on the fact that Nardulli entered into court-approved stipulations with both GECC and Keystone that affirmed the validity of their perfected security interests in certain equipment, and authorized granting security interests in other equipment. The filing of financing statements by GECC or Keystone would have served no purpose with respect to Nardulli. The purpose of a financing statement is to put a credit-searcher on notice of the possible existence of a lien and indicate where to obtain further information. J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 952 (2d ed. 1980); see 2 R. Alderman, A Transactional Guide to the Uniform Commercial Code, 968-80 (2d ed. 1983). In light of these facts and the purposes of the U.C.C. filing requirements, Nardulli cannot avoid those liens merely because GECC and Keystone failed to comply with statutory requirements not intended to protect Nardulli.
 
 
 36
 Similar issues were examined in Rodi Boat Co. v. Provident Tradesmens Bank & Trust Co., 236 F.Supp. 935 (E.D.Pa.1964), aff'd 399 F.2d 259 (3d Cir.1964). The court held that failure to file a financing statement did not result in a loss by a lienholder of title to a boat as between lienholder and purchaser:
 
 
 37
 whatever rights, if any, the [lienholder] may have lost through failing to file a financing statement, it did not lose title to the boat between it and [the purchaser]. It is not questioned that in most jurisdictions, including Pennsylvania, failure to comply with the recording statutes makes a conditional sale absolute and the reservation of title invalid as to the persons protected by the statutes. Such persons are bona fide purchasers, creditors who have extended credit to the buyer in reliance upon his possession of the collateral, and the like....
 
 
 38
 Id. at 937 (emphasis in original). Therefore, despite GECC's failure to file in Butler County a copy of its previously filed financing statements, it maintains a valid security interest in this equipment as between it and Nardulli. For the same reasons, Nardulli may not avoid Keystone's liens on the equipment located in Butler County.
 
 B. Equipment located in Indiana
 
 39
 For reasons already expressed, we also hold that, as against Nardulli, appellees have valid security interests in the equipment Nardulli moved to Indiana in 1983 and 1984.
 
 
 40
 Under the Indiana and Pennsylvania U.C.C.,[9] when collateral subject to a security interest perfected in another jurisdiction is moved into Indiana or Pennsylvania, financing statements must be filed within four months. Ind.Code Ann. Sec. 26-1-9-103(3) (Burns 1974)[10]; 13 Pa.Cons.Stat. Sec. 9103(a)(4)(i) (1982). The purpose of the four-month filing requirement is to protect subsequent creditors and/or purchasers of the collateral who otherwise cannot determine whether the collateral is subject to the interests of a third party. See Citizens National Bank of Evansville v. Wedel, 489 N.E.2d 1203, 1206 (Ind.App.1986); see generally J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code 952, 976 (2d ed. 1980).
 
 
 41
 Because at the inception of the bankruptcy proceedings Nardulli and the trustee had knowledge of the liens held by GECC and Keystone, as evidenced by the stipulation, they may not avoid them simply because those creditors did not file financing statements. The filing requirements were not enacted to protect Nardulli; they were enacted to protect future creditors or purchasers, such as the Whole Nine Yards Co. Citizens National Bank of Evansville v. Wedel, 489 N.E.2d at 1206; see also In re Chaseley's Foods, Inc., 30 B.R. 452 (N.D.Ind.1983), aff'd, 726 F.2d 303 (7th Cir.1983).
 
 
 42
 We affirm the district court's holding that GECC has a perfected security interest and therefore is entitled to the full proceeds resulting from the sale of the equipment. We also affirm the district court's holding that Keystone maintains the liens that existed prior to the initiation of the bankruptcy proceedings in 1980.
 
 3. The Trustee
 
 43
 The trustee contends that her status as a hypothetical lienholder under 11 U.S.C. Sec. 544 is determined as of the date of conversion of the case from a Chapter 11 to a Chapter 7 proceeding. She argues that even if the plan did not divest GECC and Keystone of their liens, her interest as a hypothetical lienholder is superior to their interests as lienholders because they did not file continuation financing statements prior to the conversion.
 
 
 44
 GECC and Keystone contend that the trustee's status as a hypothetical lienholder is determined as of the date of commencement of the bankruptcy proceedings, not the date of conversion. Accordingly, they argue that because their liens were validly perfected as of commencement of the bankruptcy proceedings, their position as lienholders is superior to that of the trustee. We agree. Section 544 puts the trustee in the position of a hypothetical lien creditor as of the date a debtor files for relief in bankruptcy. 11 U.S.C. Sec. 544 (1982)[11]; see J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, 996-99 (2d ed. 1980).
 
 
 45
 Conversion from a Chapter 11 to a Chapter 7 proceeding is irrelevant. 11 U.S.C. Sec. 348(a) provides:
 
 
 46
 Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.
 
 
 47
 11 U.S.C. Sec. 348(a) (1982). Subsections (b) and (c) of 11 U.S.C. Sec. 348 are not applicable here. Therefore, conversion of this case to a Chapter 7 proceeding did not affect the date of commencement of the case for purposes of fixing the trustee's status as a hypothetical lienholder under 11 U.S.C. Sec. 544. Cf. In re Williamson, 804 F.2d 1355, 1359 (5th Cir.1986) (debtor's eligibility for homestead exemption is determined as of the Chapter 11 filing date and not as of date of conversion to a Chapter 7 proceeding).
 
 
 48
 Other courts have held that the hypothetical lienholder status granted a trustee by 11 U.S.C. Sec. 544 inures upon commencement of bankruptcy proceedings. In In re Catamount Dyers, Inc., 50 B.R. 788 (D.Vt.1985), the court held that the rights as lienholders of the U.S. Small Business Administration and Clark Equipment Credit Corporation were superior to those of the trustee as a hypothetical lienholder because those creditors had complied with the filing requirements of the U.C.C., and hence had validly perfected security interests in the collateral as of the date of filing of the debtor's petition in bankruptcy. The court reasoned that a secured creditor whose financing statement expires subsequent to the commencement of bankruptcy proceedings does not have to file a continuation statement in order to maintain its secured status against the trustee. Such a requirement "would serve no useful purpose." Id. at 790.
 
 
 49
 Similarly, in In re Chaseley's Foods, Inc., the court held that a trustee could not avoid a lien that became unperfected after commencement of bankruptcy proceedings. The court reasoned that because the trustee has notice of perfected liens at the commencement of bankruptcy proceedings, he cannot be injured by the creditor's subsequent failure to file a continuation statement, the purpose of which is to provide notice of existing liens to unsuspecting creditors. Furthermore, because 11 U.S.C. Sec. 544(a)(1) is intended to protect general creditors of the debtor against "secret" liens, that section should not be construed to provide the trustee with an interest superior to that of creditors whose interests were perfected prior to the commencement of bankruptcy proceedings. See Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658 (2d Cir.1940) (trustee's rights are determined at the time of bankruptcy and liens valid at that time remain valid as against the trustee); Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed. 645 (1931) (recognizing that valid liens existing at the time of commencement of a bankruptcy proceeding are preserved). We agree.
 
 
 50
 The case before us is different from other cases that have held that a trustee, as a hypothetical lienholder, may avoid security interests that were unperfected at the time of commencement of the bankruptcy proceeding. For example, in In re Dennis Mitchell Indus., Inc., 419 F.2d 349, 358 (3d Cir.1969), this court held that the unperfected security interest of a lienholder was subordinate to the rights of the trustee[12] as a hypothetical lienholder pursuant to Sec. 70(c) (the predecessor to 11 U.S.C. Sec. 544) and Sec. 9-301(1)(b) and (3) of the Uniform Commercial Code. The court found that the security interest of the creditor, Schwabe, from whom the debtor (Mitchell Industries) had purchased certain equipment, was unperfected as of the date Mitchell filed its Chapter 11 petition. Id. at 357. The court then stated "[t]hat being the case, it follows that Schwabe's interest is subordinate to the rights of the trustee...." Id. at 358. See also In re Video East, Inc., 41 B.R. 176, 180-81 (Bankr.E.D.Pa.1984).
 
 
 51
 In Mitchell and Video East, the creditors' security interests were not perfected at the time of commencement of bankruptcy proceedings. Because both GECC and Keystone had validly perfected security interests on October 22, 1980, the date on which Nardulli filed its voluntary petition for relief in bankruptcy, and because Nardulli affirmed the continuing validity of those security interests in the court-approved stipulation, the rights of GECC and Keystone as lienholders are superior to those of the trustee as a hypothetical lienholder under Sec. 544.
 
 
 52
 For the reasons discussed, the judgments of the district court will be affirmed.
 
 
 
 *
 The Honorable Joseph J. Farnan, Jr., United States District Judge for the District of Delaware, sitting by designation
 
 
 [1]
 On January 8, 1986, the case was converted to a Chapter 7 proceeding and a trustee was appointed
 
 
 [2]
 Under the facts of this case and for purposes of the issues to be decided, the failure to file an initial financing statement is no different from the failure to file continuation statements and is therefore treated the same
 
 
 [3]
 GECC has appealed this sale to the district court. Additionally, Whole Nine Yards Co. has filed for bankruptcy in Indiana and has listed the artisan's lien as an asset
 
 
 [4]
 13 Pa.Cons.Stat. Sec. 9403(b) provides, inter alia, that "[i]f a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of 60 days or until expiration of the five-year period [of effectiveness of the original filing], whichever occurs later." 13 Pa.Cons.Stat. Sec. 9403(b) (1982)
 
 
 [5]
 Indiana Code Sec. 26-1-9-103(3) provides, inter alia, that "[i]f the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four-month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four-month period; in such case perfection dates from the time of perfection in this state." Ind.Code Ann. Sec. 26-1-9-103(3) (Burns 1974). This section was recently amended and is codified at Ind.Code Ann. Sec. 26-1-9-103(1)(d)(i) (Burns 1987 Supp.)
 
 
 [6]
 Subsection (c) was amended in 1984 and is codified at 11 U.S.C. Sec. 1141(c) (Supp. II 1984)
 
 
 [7]
 In the "Definitions" section of the Plan, "debtors" are identified as Nardulli & Sons Co., Inc., Etna Equipment & Supply Co., Inc., and Glade Mill Coal Co., GECC J.A. at 135a; Keystone J.A. at 172a
 
 
 [8]
 Because we conclude that the plan preserves the security interests, we do not decide whether divestment of a lien by a Chapter 11 plan (either by an unambiguous declaration that the lien is divested, or by failure of a confirmed plan to provide for preservation of the lien), where divestment was not sought in a separate judicial proceeding is a valid exercise of power under the Bankruptcy Code. In In re Tarnow, 749 F.2d 464, 466 (7th Cir.1984), the court held that where a party in interest has not affirmatively requested that the court allow or disallow a creditor's claim, the creditor's liens will pass through bankruptcy unaffected. See also Relihan v. Exch. Bank, 69 B.R. 122, 125-27 (S.D.Ga.1985); Estate of Lellock v. Prudential Ins. Co. of Am., 811 F.2d 186, 188 (3d Cir.1987)
 
 
 [9]
 Because Pennsylvania and Indiana have the same provision with respect to refiling when collateral subject to an already perfected security interest is brought into the state, we need not decide which state's law applies. The result under either state's law is the same
 
 
 [10]
 This provision of the Indiana Code was recently amended and now has language identical to its Pennsylvania counterpart. It is codified at Ind.Code Ann. Sec. 26-1-9-103(1)(d)(i) (Burns Supp.1987)
 
 
 [11]
 11 U.S.C. Sec. 544(a) was amended in 1984 and is codified at 11 U.S.C. Sec. 544(a) (Supp. II 1984)
 
 
 [12]
 Although the appellant in Mitchell was not actually the trustee, appellant succeeded to the rights of the trustee, and his status as a hypothetical lienholder was identical to that of the trustee. Therefore, a determination of the rights of appellant necessarily entailed a determination of the rights of the trustee