In re Jimmy W. PERKINS, Jr., Debtor.

Jimmy W. PERKINS, Jr., Plaintiff,

v.

Gerald C. GILBERT, d/b/a Easy Terms
Auto Sales, Defendant.

In re Addie R. PERKINS, Debtor.

Addie PERKINS, Plaintiff,

v.

Gerald C. GILBERT, d/b/a Easy Terms
Auto Sales, Defendant.

Bankruptcy Nos. 93–10087–
ALB, 91–10460–ALB.
Adv. Nos. 93–1031–ALB, 93–1043–ALB.

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

June 30, 1994.

George W. Woodall, Albany, GA, for debtors/plaintiffs.

Phil Cannon, Albany, GA, for defendant.

A. Kristin Smith, Chapter 13 Trustee, Columbus, GA.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter is before the Court on two adversaries, both captioned as a Complaint To Determine Validity, Extent, And Priority Of Lien pursuant to 11 U.S.C. § 506 filed by plaintiffs Addie Perkins and Jimmy Perkins, Debtors in the above styled cases. These are core matters pursuant to 28 U.S.C. § 157(b)(2)(K). Because of the similarity of facts and legal issues in these proceedings, a consolidated trial was held on April 1, 1994. These findings of fact and conclusions of law are published in compliance with Fed. R.Bankr.P. 7052.

## FINDINGS OF FACT

### In re Jimmy Perkins

Jimmy Perkins filed his petition under Chapter 13 of the Bankruptcy Code on February 12, 1993. Mr. Perkins entered into a sales contract with Gerald Gilbert (D.B.A. Easy Terms Auto Sales) on December 14, 1990, for the purchase of a 1978 Cadillac. Under the terms of the sales contract, Mr. Gilbert retained title to secure payment and received a security interest in the vehicle. A Certificate of Title to the car was issued by the State of Georgia on February 14, 1990, listing Jimmy Perkins as owner and Gerald Gilbert as first lien holder.

Mr. Perkins contends that pursuant to Georgia law, Mr. Gilbert's security interest in

the vehicle has expired. Mr. Gilbert disputes this reading of applicable Georgia law, and maintains that he possesses a valid security interest in the car.

**In re Addie Perkins**

Addie Perkins filed her petition under Chapter 13 of the Bankruptcy Code on June 10, 1991. Mrs. Perkins entered into a sales contract with Mr. Gilbert on February 26, 1991, for the purchase of a 1985 Cadillac. Under the terms of the sales contract, Mr. Gilbert retained title to secure payment and received a security interest in the vehicle.

An application for a Georgia Certificate of Title to the 1985 Cadillac was made at the Dougherty County Tag Office on March 4, 1991. The application was received by the Motor Vehicle Division of the Georgia Department of Revenue on April 4, 1991. A Certificate of Title to the car was issued by the State of Georgia on April 23, 1991, listing Timothy Perkins as owner and Gerald Gilbert as first lien holder.

Mrs. Perkins had previously dealt with Mr. Gilbert on December 29, 1990. At that time Mrs. Perkins entered into a sales contract with Mr. Gilbert for the purchase of a 1979 Mercury. Mr. Gilbert retained title to secure payment and received a security interest in the vehicle.

An application for a Georgia Certificate of Title to the 1979 Mercury was made at the Dougherty County Tag Office on December 31, 1990. The application was received by the Motor Vehicle Division of the Georgia Department of Revenue on January 3, 1991. A Certificate of Title to the 1979 Mercury was issued by the State of Georgia on January 17, 1991.

Mrs. Perkins contends that Mr. Gilbert failed to perfect his security interest in the two vehicles under applicable Georgia law. Alternatively, Mrs. Perkins claims that Mr. Gilbert's security interest in the 1979 Mercury has lapsed.

Mr. Gilbert took no other steps to perfect his interest in the vehicles. Specifically, Mr. Gilbert did not give any notice to the commissioner as to his security interest after the 1978 Cadillac and the 1979 Mercury became 15 model years old.

## CONCLUSIONS OF LAW

Property interests in bankruptcy are defined by state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The issues presented here relate to the perfection of security interests in motor vehicles under Georgia law.

Both Jimmy Perkins and Addie Perkins contend that under applicable Georgia law Mr. Gilbert's security interest in their 1978 Cadillac and 1979 Mercury respectively lapsed prior to the filing of their bankruptcy petitions.

The Georgia Code provides that certain vehicles need not have certificates of title, and that under specified circumstances a security interest in such a vehicle may lapse. It appears that O.C.G.A. § 40–3–4 is determinative of this issue. Relevant portions of the Georgia Code are as follows:

No certificate of title shall be obtained for
. . .

(14)(A) A vehicle, other than a mobile home or crane, which weighs less than 10,000 pounds gross vehicle weight and which is 15 or more model years old. For purposes of this subparagraph, a model year begins on September 1 of each year. . . .

(C)(i) A security interest in or lien against a vehicle which is subject to the exclusion provided for in subparagraph (A) of this paragraph and which is perfected on or before the date such vehicle becomes subject to the operation of subparagraph (A) of this paragraph shall lapse unless a notice of such security interest or lien is filed with the commissioner within 30 days from the date such vehicle becomes subject to the exclusion provided for in subparagraph (A) of this paragraph.

O.C.G.A. § 40–3–4(14).

■■■■ Therefore, this Court must determine when the vehicles became 15 model years old and if the security interests in question were perfected prior to that time. There is no Georgia case law available which provides any guidance on the issue of the age of a car in model years. Conflicting evidence

was presented at the trial as to the proper method for determining the age of a vehicle. However, evidence in the form of a letter and accompanying tables from the Georgia Department of Revenue provides the appropriate method in this Court's opinion.[1]

According to that evidence, a 1978 vehicle became 15 model years old as of September 1, 1991. Similarly, a 1979 vehicle became 15 model years old as of September 1, 1992. It is not disputed that Mr. Gilbert failed to give notice to the commissioner within 30 days of these dates as is required by O.C.G.A. § 40-3-4(14)(C)(i). It remains for the Court to determine if Mr. Gilbert perfected his respective security interests prior to those dates.

Perfection of a security interest on a motor vehicle in Georgia is accomplished pursuant to O.C.G.A. § 40-3-50. The code section in force at the time of these transactions[2] was as follows:

A security interest is perfected by delivery to the commissioner of the existing certificate of title, if any, and an application for a certificate of title containing the name and address of the holder of a security interest and the required fee. The security interest is perfected as of the time of its creation if the delivery is completed within 20 days thereafter; otherwise, as of the date of the delivery to the commissioner. When the security interest is perfected as provided in this subsection, it shall constitute notice to everybody of the security interest of the holder.

O.C.G.A. § 40-3-50(b) (1990).

■ There is no evidence before the Court as to exactly when the commissioner received the application for Certificate of Title and accompanying documents regarding Mr. Perkins' 1978 Cadillac. However, the Certificate of Title was issued by the commissioner on February 14, 1990, well before September 1, 1991, the date the vehicle became 15 model years old. Mr. Perkins filed his bankruptcy petition on February 12, 1993. Therefore, the Court concludes that Mr. Gilbert perfected his security interest prior to the date on which the vehicle turned 15 model years old, and his security interest lapsed prior to the commencement of this bankruptcy case pursuant to O.C.G.A. § 40-3-4(14)(C)(i).

■ Evidence was presented that the commissioner received the application for certificate of title and accompanying documents for Mrs. Perkins' 1979 Mercury on January 3, 1991. This is the date of perfection of Mr. Gilbert's security interest. O.C.G.A. § 40-3-50(b). The vehicle turned 15 model years old on September 1, 1992. Under Georgia law, Mr. Gilbert's security interest was due to expire on that date. However, the filing of Mrs. Perkins' bankruptcy petition prevented any lapse of Mr. Gilbert's security interest.

■ The secured status of a creditor is determined as of the date of the filing of the bankruptcy petition. *Robinson v. U.S. Small Business Admin. (In re Catamount Dyers, Inc.)*, 50 B.R. 788, 790 (Bankr.D.Vermont 1985). Security interests which would lapse under state law during the pendency of a bankruptcy case will not do so, as "valid liens

---

1. The construction of a statute offered by the agency in charge of enforcing the statute should be afforded deference unless the administrative interpretation is contrary to the intent of the legislature. *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), r'hng denied 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). The Court finds that the interpretation offered by the Georgia Department of Revenue is reasonable, and should be afforded deference. *Id.* at 843, 104 S.Ct. at 2782. There is ample room for disagreement in the method of aging automobiles in the construction of this statute. A 1978 vehicle was first offered for sale in the fall of 1977. In the fall of 1991, 1992 model vehicles are being offered for sale. This is a 15 year span of time.

The method used by the agency utilizes this logic in counting the 15 year period. Arguably, a 1978 vehicle could be purchased late in the year in 1978. That vehicle would not be 15 years old until late in the year in 1993. There may be a sharp contrast between the actual age and model year age of an automobile. The agency's interpretation of the statute seems to be more attentive to the model year age and the marketing environment for used cars than for the actual age of the car in question.

2. That section of the Georgia Code has been subsequently amended. The amended portions of O.C.G.A. § 40-3-50 are not relevant to the immediate analysis.

existing at the time of the commencement of a bankruptcy proceeding are preserved." *Id.* at 790, quoting *Isaacs v. Hobbs Tie and Timber Co.,* 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed. 645 (1930). Mr. Gilbert held a perfected security interest in the 1979 Mercury as of January 3, 1991. Mrs. Perkins filed her petition under Chapter 13 of the Bankruptcy Code on June 10, 1991. Mr. Gilbert's security interest was not due to lapse until September 1, 1992. Therefore, Georgia law will not divest Mr. Gilbert of his perfected security interest where the lapse would not have occurred until after Mrs. Perkins filed her bankruptcy petition. *Id.* at 790.

■ Mr. Gilbert's claim against Mr. Perkins based on the purchase of the 1978 Cadillac will be allowed as unsecured. Mr. Gilbert's claim against Mrs. Perkins based on the purchase of the 1979 Mercury will be allowed as secured.

■ Mrs. Perkins does not dispute that a security interest in the 1985 Cadillac was created in favor of Mr. Gilbert when she purchased the car.[3] However, Mrs. Perkins claims that Mr. Gilbert failed to comply with O.C.G.A. §§ 40–3–51[4] and 40–3–32,[5] and therefore has no security interest in the vehicle. Mr. Gilbert claims that the 1985 Cadillac should not be listed as an asset in Mrs. Perkins' case because Timothy Perkins is listed as the owner on the Certificate of Title.

As for this contention, while the Certificate of Title does provide a simple method of determining ownership of a vehicle, it is not the exclusive method of proving ownership. *Hightower v. Berlin,* 129 Ga.App. 246, 199 S.E.2d 335 (1973). As the court in *Hightower* stated "[t]he statute provides that the certificate of title is prima facie evidence of the facts appearing in the certificate, including the name of the owner. [citations omitted]. The statute did not change the existing case law as to the manner in which owner-

3. Relevant portions of the sales contract provide:

Security: Buyer has this day purchased and received the below described property, goods, service, or equipment, and agrees to give holder security title to and a security interest in the following until total of the payments and any and all other indebtedness, now or hereafter due or owing by Buyer to Holder however or whenever incurred is paid: ... Used 85 Cadillac 4–Door 1G6DW6986F9744480.

4. O.C.G.A. § 40–3–51 provides:

If the owner creates a security interest in a vehicle:
(1) The owner shall immediately execute the application in the space provided therefor on the certificate of title or on a separate form that the commissioner prescribes, naming the holder of the security interest on the certificate and showing the name and address of the security interest holder, and shall cause the certificate, the application, and the required fee to be delivered to the security interest holder;
(2) The security interest holder shall immediately cause the certificate and application and the required fee to be mailed or delivered to the commissioner or his appropriate authorized county tag agent within 90 days of the date of creation of the security interest or lien. If the certificate of title and application and the required fee are not mailed or delivered within such time, the lien or security interest holder shall be required to pay a $10.00 penalty in addition to the ordinary title fee provided for by this chapter. If the documents submitted in support of the title application are re-

jected, the party submitting the documents shall have 60 days from the date of initial rejection to resubmit the documents required by the commissioner for the issuance of title. If the documents are not properly resubmitted within the 60 day period, there shall be an additional $10.00 penalty assessed, and the owner of the vehicle shall be required to remove immediately the license plate of the vehicle and return same to the commissioner. The license shall be deemed to have expired at 12:00 Midnight of the sixteenth day following the initial rejection of the documents, if the documents have not been resubmitted as required under this paragraph; and
(3) Upon receipt of the certificate of title, the application, and the required fee, the commissioner shall issue a new certificate containing the name and address of the holder of the security interest and of holders of previous unreleased security interests and liens, if any, and shall mail the certificate to the first holder on it. If more than one holder is named on the certificate, the first holder shall comply with subsection (b) of Code Section 40–3–26 in regard to notifying other holders of the content of the certificate.

5. O.C.G.A. § 40–3–32 is entitled "Transfer of vehicle generally", and provides in pertinent part:

(c) If a security interest is reserved or created at the time of the transfer, the certificate of title shall be retained by or delivered to the person who becomes the lienholder, and the parties shall comply with Code Section 40–3–51.

ship of chattels including automobiles could be proven." *Id.* at 248, 199 S.E.2d 335.

In the present case, although the Certificate of Title is in another's name, Mrs. Perkins testified without contradiction that she in fact purchased the car, and entered into a security agreement making herself liable for payments under the agreement. Additionally, Mrs. Perkins is listed as the "buyer" in the sales contract.[6] This is sufficient to make a prima facie case for ownership. *Id.* at 248, 199 S.E.2d 335. The burden then fell upon Mr. Gilbert to rebut this evidence. *Id.* at 248, 199 S.E.2d 335. He offered no counter-evidence on this point. The Court finds that Mrs. Perkins has demonstrated ownership of the vehicle consistent with Georgia law.

■ Mrs. Perkins claims that a violation of O.C.G.A. §§ 40–3–51 or 40–3–32 will nullify a security interest under Georgia law. The Court notes initially that O.C.G.A. § 40–3–51 does not purport to void a security interest if delivery of the Certificate of Title is not made within the prescribed time. Rather, that section of the Georgia Code sets forth a Ten Dollar ($10.00) penalty if delivery of relevant documents to the commissioner is not completed in timely fashion. The Georgia Code at O.C.G.A. § 40–3–32 merely requires a lienholder to comply with O.C.G.A. § 40–3–51 if the security interest is created at the time of the transfer.

A review of those Georgia Code sections and the facts of this case reveal that Mr. Gilbert did not violate either O.C.G.A. §§ 40–3–51 or 40–3–32. Documents introduced into evidence demonstrate conclusively that the commissioner received notice of Mr. Gilbert's security interest in the 1985 Cadillac. The transfer of the vehicle from Mr. Gilbert to Mrs. Perkins occurred on February 26, 1991. The commissioner's authorized tag agent received the documents required by O.C.G.A. § 40–3–51 on March 4, 1991. The commissioner received the documents on April 4, 1991, and issued the new Certificate of Title showing Mr. Gilbert as first lienholder on April 23, 1991. Neither O.C.G.A. § 40–3–32

nor O.C.G.A. § 40–3–51 will divest Mr. Gilbert of his security interest in the 1985 Cadillac.

■ Mrs. Perkins has also raised the issue of whether Mr. Gilbert perfected his security interest within 20 days of the sale in compliance with O.C.G.A. § 40–3–50(b). That section of the Georgia Code does not provide that a security interest is void if the relevant documents are not delivered within 20 days. Rather, O.C.G.A. § 40–3–50(b) states that if delivery is accomplished within 20 days, the perfection of the security interest will relate back to the time of its creation.

Mr. Gilbert delivered documents necessary for perfection of his security interest to the county tag agent rather than the commissioner. In order for the perfection of a security interest to relate back to the date of its creation, the documents had to be delivered to the commissioner within 20 days. It is not disputed that delivery to the tag agent occurred within 20 days, but actual delivery to the commissioner occurred outside the 20 day relation back period of O.C.G.A. § 40–3–50(b). Therefore, the perfection of the security interest does not appear to relate back to the date of its creation. *Harris v. General Motors Acceptance Corp. (In re Messer)*, No. 90–30329, slip op. at 10, 1991 WL 629467 (Bankr.M.D.Ga. Feb. 4, 1991).

Regardless of whether the documents were delivered within the 20 day relation back period of O.C.G.A. § 40–3–50(b), perfection occurred prior to Mrs. Perkins' petition for relief under Chapter 13. The failure to perfect the security interest within 20 days might cause the transfer to become avoidable as a preferential transfer pursuant to 11 U.S.C. § 547. The analysis of that issue is a separate matter.

Mrs. Perkins' complaint as an action to recover a preferential transfer would raise complex issues of both statutory interpretation and the constitutionality of the Georgia Legislature's recent amendment to O.C.G.A.

---

**6.** Although Timothy Perkins is listed as "co-buyer", the Court finds that Mrs. Perkins has established an interest in the vehicle, and that it is properly listed in her bankruptcy schedules. 11 U.S.C. § 541(a)(1).

§ 40–3–50(b).[7] However, before the Court may engage in an analysis under 11 U.S.C. § 547, the Court must first determine if Mrs. Perkins has standing to bring such an action under the Bankruptcy Code. The Court finds that Mrs. Perkins does not possess the requisite standing to bring an action to avoid a preferential transfer.

■■■ A Chapter 13 debtor's standing is the subject of widely divergent views.[8] However, the rule in this district regarding standing for a Chapter 13 debtor was established in the case of *Pilgreen v. Brown & Williamson Federal Credit Union (In re Pilgreen)*, 161 B.R. 552 (Bankr.M.D.Ga.1989). In *Pilgreen*, the Court found that "[a] Chapter 13 debtor lacks the standing to bring a preference action which arises only under section 547 of the Bankruptcy Code. A debtor may, however, seek to set aside a preferential transfer under section 522(h) of the Bankruptcy Code." *Id.* at 554. In order for a debtor to have standing to bring such an action the debtor must show that:

(1) the trustee could have avoided the transfer under section 547;

(2) the trustee does not attempt to avoid the transfer;

---

7. Under the 1994 amendment to O.C.G.A. § 40–3–50(b) the Georgia Legislature stated that while delivery to the commissioner was required for perfection under earlier versions of the Code, the Legislature actually intended to state that delivery to a county tag agent was also sufficient. This raises interesting issues of legislative history, statutory interpretation and the constitutionality of the recent amendment as a retroactive law. It is an inviting prospect to have a legislative body defining its legislative history where it believes that courts may have been misinformed or uninformed as to the history of the legislature's intent. In theory, what source for legislative intentions would be more accurate than the legislature's own pronouncements as to its legislative history. Yet, upon further reflection, this excursion into the past via current enactments has some very peculiar aspects. If legislative history would be determinative of some question before a court such as the case where a statute is ambiguous, the legislature could influence the outcome of a court proceeding and the rights of the parties retroactively by defining legislative history in such a way as to force the court to a particular conclusion as to the legislature's past intentions. Perhaps such a result would be desirable in the case where the original statute was ambiguous. But in this case, where there appears to be no ambiguity, the legislature still urges by its recent enactment, that the term "commissioners" included the "county tag agent." The legislature has determined that its prior statute was ambiguous and in need of reference to legislative history, which it gratuitously supplies. A determination will have to be made as to whether the concept of legislative history necessarily includes a limitation requiring that creation of the history itself be contemporaneous with the enactment of the statute. The Supreme Court of the United States has addressed this issue on several occasions and provides somewhat contradictory guidance. Maxims generated from years of case law state on the one hand that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960) citing *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Consumer Product Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); see also *Com. of Mass. v. Sec. of Health and Human Serv.*, 899 F.2d 53, 60 (1st Cir.1990); *Riddle v. Sec. of Health and Human Serv.*, 817 F.2d 1238, 1246 (6th Cir.1987) (Engel, J., dissenting) quoting *Teamsters v. United States*, 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977) ("It is the intent of the Congress that enacted [the section] ... that controls."). On the other hand, the Supreme Court has stated that "[s]ubsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." *Red Lion Broadcasting Co., Inc. v. Fed. Communications Comm.*, 395 U.S. 367, 380–381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) citing *Federal Housing Admin. v. Darlington, Inc.*, 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958) [additional citations omitted]. While not determinative of this case, the judicial interpretation of this recent enactment of the Georgia Legislature in some other case will pose a daunting prospect to a court.

8. See *Mincey v. Milam (In re Milam)*, 37 B.R. 865 (Bankr.N.D.Ga.1984) (decision to use § 544 power to avoid transfers rests with the trustee); *In re Tillery*, 124 B.R. 127 (Bankr.M.D.Fla.1991) (debtor could not avail itself of § 544 avoidance power); *Federal National Mortgage Assoc. v. Wheeler (In re Wheeler)*, 34 B.R. 818 (Bankr. N.D.Ala.1983) (debtor may bring actions under §§ 522 and 547); *Perry v. United States (In re Perry)*, 90 B.R. 565 (Bankr.S.D.Fla.1988) (debtor could only bring actions to avoid liens on exempt property); *Coan v. United States (In re Coan)*, 72 B.R. 483 (Bankr.M.D.Fla.1987) (debtor could avoid federal tax liens); *Russo v. Ciavarella (In re Ciavarella)*, 28 B.R. 823 (Bankr.S.D.N.Y.1983) (debtor could bring § 547 action); *Pilgreen v. Brown & Williamson Federal Credit Union (In re Pilgreen)*, 161 B.R. 552 (Bankr.M.D.Ga.1989) (debtor could only bring § 547 action if the trustee first refused to do so).

(3) the transfer was involuntary;

(4) the debtor did not conceal the property;  and

(5) the debtor could have exempted such property had the trustee actually avoided the transfer.

*Id.* at 554 [citations omitted].

In the present case, Mrs. Perkins has not demonstrated in her evidence that she possesses such standing.  Therefore, the Court finds that she may not bring an action under section 547 of the Bankruptcy Code.

In sum, Mr. Gilbert failed to give notice to the commissioner in compliance with O.C.G.A. § 40–3–4(14)(C)(i), and as a result his security interest in the 1978 Cadillac lapsed prior to the commencement of Mr. Perkins bankruptcy case.  His claim regarding that vehicle will be allowed as unsecured. Mr. Gilbert's security interest in Mrs. Perkins' 1979 Mercury was not due to expire until after the commencement of her bankruptcy case.  Since the date of the petition is the relevant date for determining the status of secured claims, Mr. Gilbert's claim regarding that vehicle will be allowed as secured. Mrs. Perkins has failed to show that Mr. Gilbert's security interest in the 1985 Cadillac is invalid.  Moreover, Mrs. Perkins lacks standing to bring an action under 11 U.S.C. § 547.  Therefore, the Court finds that Mr. Gilbert's claim regarding the 1985 Cadillac is allowed as secured.