ELECTRONIC CITATION: 2010 FED App. 0004P (6th Cir.)
File Name: 10b0004p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CUMBERLAND MOLDED PRODUCTS, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | No. 09-8049 |
| SUSAN R. LIMOR, TRUSTEE, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST NATIONAL BANK OF WOODBURY, | ) | |
| | ) | |
| Defendant -Appellant. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee, at Nashville.
No. 08-07812, Adv. No. 09-00003.

Argued: May 3, 2010

Decided and Filed: June 23, 2010

Before: BOSWELL, HARRIS, SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Thomas F. Bloom, LAW OFFICE, Nashville, Tennessee, for Appellant. Kathryn A. Stephenson, TRAUGER & TUKE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Thomas F. Bloom, LAW OFFICE, Nashville, Tennessee, James D. Lane, II, HULL, RAY, RIEDER, EWELL, LANE & RIDNER, Tullahoma, Tennessee, for Appellant. Kathryn A. Stephenson, TRAUGER & TUKE, Nashville, Tennessee, Susan R. Limor, SUSAN R. LIMOR, ATTORNEY AT LAW, A PROFESSIONAL CORPORATION, Nashville, Tennessee, for Appellee.

---

**OPINION**

---

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge. This is an appeal from the bankruptcy court's order granting summary judgment to Susan T. Limor (the "Trustee"), the chapter 7 trustee in the chapter 7 bankruptcy case of Cumberland Molded Products, LLC (the "Debtor"), on her adversary proceeding seeking to avoid the security interest of First National Bank of Woodbury (the "Bank") in the Debtor's checking account (the "Checking Account") and in proceeds of accounts receivable (the "Funds") deposited in the Checking Account.

## I.   ISSUES ON APPEAL

Did the Bank lose either its perfected security interest or right of setoff in either the Funds or Checking Account or proceeds thereof when it honored a check drawn by the Debtor and made payable to the Trustee after the Debtor's chapter 7 bankruptcy case was commenced?

## II.   JURISDICTION AND STANDARD OF REVIEW

The Panel has jurisdiction to hear appeals from "(1) final judgments, orders and decrees; ... and (3) with leave of court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a). A party may bring an appeal as of right under 28 U.S.C. § 158(a)(1) from final judgments, orders and decrees of the bankruptcy court. A decision is considered final and appealable under 28 U.S.C. § 158(a)(1) if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497 (1989). An order disposing of fewer than all claims in an adversary proceeding does not end the litigation on the merits and is not a final order. *Settembre v. Fid. & Guar. Life Ins. Co.*, 552 F.3d 438, 441 (6th Cir. 2009). The bankruptcy court in this case entered an order pursuant to Rule 54(b) finding that there was no just reason to delay determination of the issues on appeal here. Therefore, the order granting plaintiff's motion for summary judgment is final for the purposes of this appeal, and the Panel has jurisdiction.

-2-

The bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed *de novo. Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 433 (6th Cir. 2004). Following consideration of the record in its entirety, if the trial court's view of the facts is plausible, the Panel may not reverse it even though, had it been sitting as the trier of fact, it would have weighed the evidence differently. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74, 105 S. Ct. 1504 (1985).

The bankruptcy court's legal conclusions are reviewed *de novo. Yoppolo v. MBNA America Bank, N.A.* (*In re Dilworth*), 560 F.3d 562, 563 (6th Cir. 2009); *Stevenson v. J.C. Bradford & Company (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002). *De novo* review means that the Panel should determine the law independently from the trial court's determination. *See Razavi v. C.I.R.*, 74 F.3d 125, 127 (6th Cir. 1996); *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

## III. FACTS

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 29, 2008 (the "Petition Date"). Prior to the Petition Date, the Debtor maintained the Checking Account at the Bank. In addition, the Bank lent money to the Debtor. In October 2007, the Debtor consolidated its loan obligations to the Bank into a single promissory note for $1 million. In connection with the consolidated loan, the Debtor executed security agreements granting the Bank a security interest in the "Collateral." Collateral was defined in the security agreements as "all equipment, machinery, inventory, tools, accounts receivable and all general intangibles of [Debtor] whether now owned or hereafter acquired, together with substitutes and replacements thereof, all accessions, and accessories added to or used in connection with such equipment." In addition, Collateral was defined to include all proceeds from the sale, destruction, loss or other disposition of any of the property described in the Collateral section.

The Bank properly filed UCC-1 financing statements to perfect its security interest in the Collateral amenable to perfection through filing. It is undisputed that the Bank held this perfected security interest on the Petition Date.

The Checking Account at the Bank was a regular commercial checking account with next day funds availability. Prior to the Petition Date, the Debtor deposited payments from its customers into the Checking Account. On its schedules, the Debtor listed the balance of the Checking Account as of the Petition Date as $455,655.66. The Trustee concedes that the monies deposited into the Checking Account were, with insignificant exceptions, proceeds of accounts receivable, though the precise sum of accounts receivable proceeds was not specified. The Debtor listed the Bank as a secured creditor on Schedule D. As of the Petition Date, the Debtor was not in default of its payment obligations to the Bank.

After the Petition Date, the Trustee asked the Debtor to turn over to her the Funds in the Checking Account. Four days after the Petition Date, the Debtor delivered a check in the amount of $454,655.66 to the Trustee. The check was deposited into the Trustee's account and posted by the Bank on September 12, 2008. Subsequently, the Trustee asked the Bank to close the Checking Account and deliver any remaining funds in the Checking Account to the Trustee. The Bank complied.

There is no dispute that the Bank was aware prior to the Petition Date that the Debtor was contemplating filing a voluntary petition for relief, and, in any event, the Bank was aware prior to the posting of the check on September 12, 2008 that the Debtor had filed for bankruptcy. However, as of the Petition Date, the Debtor was current on its obligations to the Bank. The Bank took no immediate steps to freeze the Checking Account or setoff the Debtor's indebtedness to the Bank. Rather, in November 2008, the Bank filed a motion for relief from stay and abandonment seeking both authority to possess the Funds held by the Trustee and an order directing the Trustee to turn over all interest accrued on the Funds to the Bank.

The Trustee filed a complaint against the Bank to determine the validity, priority, and extent of liens or interests that the Bank allegedly held in certain property of the estate. The Bank filed an

answer and counterclaim against the Trustee again seeking relief from the automatic stay and turnover of property subject to the Bank's alleged security interest. Count I of the Trustee's amended complaint alleges that the Debtor did not grant the Bank a security interest in the Checking Account. Therefore, the Bank had no interest in the Funds in the Checking Account and the Funds are unencumbered property of the estate. Count II alleges that the Bank's security interest in the Checking Account is unperfected because the Bank failed to maintain control. Therefore, the Trustee asserts that, pursuant to § 544 of the Bankruptcy Code, the Bank's security interest in the Checking Account is void. Count III alleges that as a transferee of funds from a deposit account under UCC 9-332, the Trustee takes the Funds free of the Bank's security interest.[1]

On May 29, 2009, the Trustee filed a motion for summary judgment seeking a determination that the Funds transferred postpetition to the Debtor's estate from the Checking Account at the Bank are property of the estate and not subject to a perfected security interest. Although the motion does not articulate the relief sought by reference to any particular count of the complaint, the Trustee's summary judgment motion seeks relief with respect to counts II and III of her Amended Complaint. On May 30, 2009, the Bank filed its own motion for summary judgment seeking judgment in its favor with respect to all four counts in the Trustee's Amended Complaint.

The bankruptcy court entered a memorandum opinion on July 21, 2009 holding "that the Chapter 7 Trustee's motion for summary judgment should be granted. Specifically, the Court finds that the funds held by the Chapter 7 Trustee are property of the estate, free and clear of the defendant's unperfected security interest. It follows that the defendant's motion for summary judgment should be denied." The Bank timely filed a notice of appeal.

## IV. DISCUSSION

Upon the filing of the voluntary petition for relief, the Funds and the Checking Account became property of the estate under 11 U.S.C. § 541. However, this property of the estate was subject to an undisputed perfected security interest as of the Petition Date. Claims and their

---

[1]The trustee's complaint had a fourth count which sought to avoid the underlying obligation under § 548; however, that count is not at issue in this appeal.

respective priority are determined as of the petition date. *See* 11 U.S.C. §§ 502, 506 and 507. The Trustee concedes that the Bank had a perfected security interest in the Checking Account and the Funds *as of the Petition Date*.

In a chapter 7 case, a primary duty of a trustee is to marshal assets for the benefit of creditors. *See* 11 U.S.C. § 704. She is vested with certain powers to help her perform her duties. *See*, *e.g.*, 11 U.S.C. §§ 544, 545, 547, 548 and 549. Those powers include the ability to avoid certain prepetition transfers and unauthorized postpetition transfers. However, the trustee's powers are measured as of the commencement of the bankruptcy case and only extend to property that was property of the estate at the time the case was filed. *See Northern Acres, Inc. v. Hillman State Bank (In re Northern Acres, Inc.)*, 52 B.R. 641, 647 (Bank. E.D. Mich. 1985) ("We must assume that the language 'as of the commencement of the case' was included in the statute with a purpose in mind, and we should give effect to that purpose. Clearly, the phrase defines when the trustee's lien avoidance powers arise; the question is whether it also defines a particular moment in time at which the trustee's powers are to be measured. We think it does.").

The extent to which a claim is properly secured in a chapter 7 case is determined as of the petition date. *See Hubbard v. United States (In re Hubbard)*, 135 B.R. 430, 432 (Bankr. S.D. Fla. 1991) ("[I]n determining the extent to which a creditor is secured, this Court must look to the value of the collateral as of the date of the filing of the Chapter 7 petition in bankruptcy."); *accord Perkins v. Gilbert (In re Perkins)*, 169 B.R. 455, 458 (Bankr. M.D. Ga. 1994). *See also Matter of Phillips Constr. Co.*, 579 F.2d 431 (7th Cir. 1978) (in case under 1898 Act, Seventh Circuit held that since mechanics' lien was enforceable when petition for bankruptcy was filed, creditor was not required to take further action in state court to preserve its secured claim in bankruptcy); *Toranto v. Dzikowski*, 380 B.R. 96, 99 (S.D. Fla. 2007) (creditor's judgment lien did not lapse as a result of non-renewal because it was frozen by the bankruptcy filing); *Mostoller v. Citicapital Commercial Corp.* (*In re Stetson & Associates, Inc.*), 330 B.R. 613, 623-24 & n.11 (Bankr. E.D. Tenn. 2005) (lapse of financing statements postpetition does not affect secured creditor's priority as against trustee). *Cf. In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989) (state requirement that creditor file for extension of judgment lien was tolled under 11 U.S.C. § 108(c), therefore Second Circuit did not reach creditor's argument that judgment lien remains valid because it was valid at time debtor filed

her petition).  If a judgment lien were to expire the day after the petition was filed, the claim would still be secured for purposes of § 506.  Similarly, if a secured creditor were to turn over to a chapter 7 trustee property securing the creditor's claim, the secured nature of the claim would not be lost merely because the creditor no longer had possession of its collateral. *Cf. Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 310 (7th Cir. 1983) ("[O]nce the bankruptcy petition is filed the secured creditor should not be required to file a continuation statement to preserve the validity of its lien.").  It is undisputed that on the Petition Date the Bank held a properly perfected secured claim.

The Trustee attempts to avoid the Bank's properly perfected security interest pursuant to § 544.  Section 544 grants trustees the rights and powers of a judicial lien creditor.  However, a trustee's status as a hypothetical judgment lien holder "inures upon commencement of the case." *See General Electric Credit Corp. v. Nardulli & Sons, Inc..* 836 F.2d 184, 192 (3rd Cir. 1998).  Section 544(a)(1) is intended to protect general creditors of the debtor against "secret" liens. *Id.*  It should not be construed to provide the trustee with an interest superior to that of creditors whose interests were perfected prior to the commencement of bankruptcy proceedings. *Id.* (citing *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658 (2d Cir.1940) (trustee's rights are determined at the time of bankruptcy and liens valid at that time remain valid as against the trustee)); *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 738, 51 S.Ct. 270, 272 (1931) (recognizing that valid liens existing at the time of commencement of a bankruptcy proceeding are preserved).   In this case, as between the Trustee, a judgment lien holder whose interest arose as of the Petition Date, and the Bank, holder of a security interest in the Checking Account and Funds which was properly perfected prior to the Petition Date, the Bank holds the superior interest.  The Trustee may not avoid the Bank's security interest pursuant to § 544.

In addition, the Trustee seeks to avoid the Bank's properly perfected security interest by arguing that UCC 9-332 allows the Trustee to take the Funds transferred to her postpetition free of the Bank's security interest.  The Trustee's attempt to focus this matter as a priority dispute capable of resolution by reference to Tennessee's version of the Uniform Commercial Code is flawed for several reasons.  First, as indicated previously, the allowance of a creditor's secured claim in Chapter 7 is determined as of the petition date.  Second, the filing of a petition automatically creates an estate under § 541 in essentially all of the debtor's property "wherever located and by whomever held."

Thus, at the time the Debtor delivered a check to the Trustee postpetition, the Funds in the Account were already property of the Debtor's estate. In this situation, a chapter 7 trustee is not a "transferee" as that term is used in Tennessee Code § 47-9-332 or UCC 9-332. This legal conclusion is supported by the official commentary in the UCC and the statutory role of a trustee under the Bankruptcy Code. For example, Official Comment 8 to UCC 9-315 recognizes that a secured party's right to proceeds is controlled by the Uniform Commercial Code, except to the extent the Bankruptcy Code provides otherwise. *See also In re Music City RV, LLC.,* 304 S.W.3d 806 (Tenn. 2010) (relying in part on the UCC official comments to interpret the Tennessee Code). In addition, Official Comment 1 to UCC 9-332 indicates that a change in ownership in the account is not a transfer, nor is the debtor itself a transferee. "Pursuant to §§ 541 and 704(1) of the Code, the trustee stands in the debtor's shoes . . . ." *Jones v. Hyatt Legal Servs. (In re Dow),* 132 B.R. 853, 861 (Bankr. S.D. Ohio 1991). Therefore, the Debtor's postpetition delivery of a check to the Trustee did nothing more than deliver to the Trustee property that was already property of the Debtor's estate.

This reading of Tennessee Code § 47-9-332 is also consistent with the policy underlying respective provisions of the UCC and the Bankruptcy Code. For example, the expressed policy for permitting a transferee to take "money free of a security interest unless the transferee acts in collusion with the debtor" is "to ensure that security interests in deposit accounts do not impair the free flow of funds" and to "minimize[] the likelihood that a secured party will enjoy a claim to whatever the transferee purchases with the funds." Tenn. Code Ann. § 47-9-332 (UCC 9-332) cmt. 3. Unlike most parties receiving a check from a debtor, a chapter 7 trustee gives no consideration when property of the debtor's estate is turned over to her. Nor does a trustee purchase anything in exchange or take action in reliance on the turnover. Rather, a chapter 7 trustee may only pay claims from property of the estate after court approval and pursuant to the priorities specified under the Bankruptcy Code. Furthermore, the policy of encouraging the voluntary turnover to the trustee of property of the estate would suffer if secured creditors knew they risked losing their secured claims simply by turning over collateral without ironclad written assurances from the trustee, if not court orders, specifying that they were not forfeiting their rights to allowed secured claims under §§ 502 and 506. Indeed, a contrary ruling would lead to a distrust of trustees, a reluctance to turnover property voluntarily, and a system that appears to reward trustees who succeed in duping inattentive secured creditors. In short, from a policy standpoint, there is no reason why a claim's allowance and

secured status in bankruptcy should not await determination under the claims process established under the Bankruptcy Code, as opposed to having a secured claim be deemed waived simply by the postpetition turnover to the trustee of property of the debtor's estate.

In addition to lien avoidance under § 544, which is not applicable in this case for the reasons set forth above, a trustee can also seek the turnover of property of the estate in the hands of third parties. *See* 11 U.S.C. §§ 542 and 543. Section 542(a) of the Bankruptcy Code provides "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." Section 542(b) provides "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

While compliance with a turnover request or the release to the trustee by a creditor holding a secured claim may result in a waiver of the ability to setoff pursuant to § 553 or § 542(b), it is not a waiver of the underlying claim nor an avoidance of the underlying security interest. *See In re Archer,* 34 B.R. 28, 31 (Bankr. N.D. Tex. 1983) ("There is nothing in § 506, nor elsewhere in the Code, that indicates that continued possession is required to maintain the secured claim."); *accord U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 211-12 (1983) ("When property seized prior to the filing of a petition is drawn into the Chapter 11 reorganization estate, the Service's tax lien is not dissolved; nor is its status as a secured creditor destroyed."); *In re Reliance Acceptance Group, Inc.*, No. 98-288, Adv. No. A-98-310, 2000 WL 33712305 at *3 (Bankr. D. Del. 2000) (noting that cases finding waiver as the result of the failure to assert setoff before surrendering possession are factually distinct from cases where the creditor transfers money at the behest of the bankruptcy trustee). The Bank had a perfected security interest as of the Petition Date and, therefore, a valid secured claim.

Contrary to the Trustee's argument, the Bank did not lose or waive its secured claim when it honored the postpetition check made payable to the Trustee. While *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), permits a bank to temporarily freeze an account without violation

of the automatic stay, nothing in *Strumpf* mandates that a bank *must* freeze a debtor's account or forfeit the secured nature of its claim. In addition, the Trustee did not seek turnover of the Funds pursuant to § 542. Since she did not employ procedures that framed a contest of the rights of the estate versus the rights of the Bank, the Trustee took the Funds subject to the perfected and unavoided security interests in existence on the Petition Date.

The Bank might have done more to protect its secured claim and avoid costly litigation with the Trustee. Nevertheless, the Bank did not lose its secured claim for purposes of §§ 502 and 506 simply by allowing the Debtor to turnover the Funds to the Trustee postpetition. Since the bankruptcy court ruled incorrectly that the Bank lost its secured claim by the postpetition turnover to the Trustee of property of the Debtor's estate, the matter must be remanded to resolve the claims at issue in the Trustee's amended complaint and the Bank's counterclaim.

## V.    CONCLUSION

For the reasons set forth above, the Panel reverses the decision of the bankruptcy court granting the Trustee summary judgment and its finding that the funds held by the Chapter 7 Trustee are free and clear of the defendant's security interest and remands for further proceedings consistent with this decision.