# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 12-6047

_____

In re: WEB2B Payment Solutions, Inc.

*Debtor*

------------------------------

North American Banking Company

*Plaintiff - Appellant*

v.

Brian F. Leonard, Trustee

*Defendant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted:  February 21, 2013
Filed:  March 25, 2013

_____

Before FEDERMAN, Chief Judge, SCHERMER, and NAIL, Bankruptcy Judges.

_____

FEDERMAN, Chief Judge

North American Banking Company (NABC) appeals from the Order of the Bankruptcy Court[1] granting summary judgment in favor of the Chapter 7 Trustee and ruling that NABC relinquished its possessory lien in account funds when it turned the funds over to the Trustee without requesting adequate protection of its possessory lien in such funds.   For the reasons that follow, the Order of the Bankruptcy Court is AFFIRMED.

## Factual Background

Debtor WEB2B Payment Solutions, Inc., was in the business of providing check clearing and payment processing services under contracts with third parties. The Debtor and NABC were parties to a Remote Deposit Capture Service Agreement ("Agreement"), under which the Debtor submitted to NABC electronic deposits of funds captured from checks received by the Debtor and its affiliates.   NABC processed the check transactions on the Debtor's behalf and immediately credited the Debtor's account.   Throughout the term of the Agreement, NABC says it routinely received claims from third parties associated with the Debtor's check cashing transactions which were rejected for various reasons.   Some of these chargeback claims were made by the United States Treasury for fraudulent, counterfeit, or forged Treasury checks.   Pursuant to the Agreement, when an item was rejected, NABC was entitled to recover the funds from the Debtor's accounts at NABC.

Under the terms of the Agreement, the Debtor assigned "all of its deposit accounts with [NABC] and any affiliate of [NABC] to [NABC] to secure its obligations to [NABC] under this Agreement," and authorized "[NABC] to debit any account maintained by [the Debtor] with [NABC] or any affiliate of [NABC] and/or set off any of [the Debtor's] obligations to [NABC] under this Agreement against any

---

[1]  The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

amount it owes to [the Debtor], in order to obtain payment of [the Debtor's] obligations under this Agreement." NABC asserts that these contractual provisions granted it both a security interest in the Debtors' funds deposited with NABC and rights of setoff.

The Debtor filed a Chapter 11 voluntary petition on April 4, 2011. As of the petition date, the Debtor had over $933,000 on deposit in its accounts with NABC. At the request of the United States Trustee, except for a $27,180.54[2] postpetition setoff to cover an overdraft in an another of the Debtor's accounts, NABC froze the account shortly after the bankruptcy filing. The case was converted to Chapter 7 on April 20, 2011, at which point Brian Leonard was appointed as Trustee. He immediately requested NABC to turn over the funds in the Debtor's accounts. NABC responded by proposing that it retain $50,000 of the funds (the "Holdback Funds") to cover potential future reclamation requests. NABC arrived at the $50,000 amount by reviewing the Debtor's history of reclamation claims and determining that this amount would be sufficient. On April 21, 2011, prior to NABC's turnover of any of the funds from the account, the Trustee agreed to NABC's proposal regarding the Holdback Funds. After holding back the $50,000, and retaining the $27,180.54 setoff, NABC turned over $883,120.46 to the Trustee on April 22, 2011. NABC never asked the Court to order that the Trustee provide adequate protection for any lien it claimed on such funds by, *e.g.*, providing that the funds turned over remain impressed with its lien.

Thereafter, NABC continued to set off reclamation claims from the Holdback Funds until the Holdback Funds were depleted. NABC says that there was an unanticipated and unprecedented volume and dollar amount of Treasury reclamations

---

[2] Apparently, NABC initially setoff $27,225.54, but it refunded $45.00 in overdraft fees, for a net setoff of $27,180.54.

of tax refund checks which had been processed by the Debtor and deposited into its accounts with NABC prior to its bankruptcy.

By the summer of 2011, NABC began notifying the Trustee that the reclamation claims associated with the Debtor's accounts were significantly larger than anticipated, and began requesting that a portion of the funds be returned to NABC to satisfy these claims. The largest single chargeback was for a fraudulent tax refund check for $363,736.55, which was deposited at NABC on March 17, 2011. By letter dated November 16, 2011 to the Trustee, NABC claimed a security interest in the funds it had allowed to be paid over to the Trustee. In a letter dated December 14, 2011, NABC reiterated that it considered itself to have a first-priority lien on the funds, as well as setoff rights, and stating that it had paid, to date, $512,457.39 to satisfy the unanticipated reclamation funds. NABC demanded that the Trustee return the full $883,120.46 to it immediately. The Trustee declined to return any of the funds to NABC.

On January 31, 2012, NABC filed an adversary proceeding against the Trustee, seeking a determination that it held a first-priority lien in the funds it had turned over to the Trustee. Thus, more than nine months after the filing of the bankruptcy case, NABC filed its first pleading seeking a determination that its possessory lien continued in the funds it had turned over to the Trustee. The parties filed cross-motions of summary judgment.

Following oral argument, the Bankruptcy Court held, first, that NABC lost its contractual right to setoff when it turned the money over, since there were no longer any funds in its possession to set off. NABC does not contest this part of the Court's ruling. In addition, however, the Bankruptcy Court held that NABC also lost its possessory lien in the funds that were turned over to the Trustee, since NABC failed to first obtain a Court order granting adequate protection of its possessory lien. It is this holding from which NABC appeals.

4

## Standard of Review

We review the Bankruptcy Court's grant of summary judgment *de novo*.[3] Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Here, there is no dispute as to the material facts; rather, the parties each sought summary judgment based on the application of the law to those facts. NABC asserts that the Bankruptcy Court erred in its application of the law. Our review is, therefore, *de novo*.

## Discussion

NABC is correct that a creditor's secured status is determined as of the date of the filing of the petition[5] and that, absent voluntary release or avoidance by the court, a secured creditor's lien generally survives a bankruptcy filing.[6] Indeed, in *In re Chaseley's Foods*, upon which NABC relies, the Seventh Circuit agreed with the secured creditor there that "the filing of a bankruptcy petition fixes a secured creditor's rights and that further action to preserve a secured lien is unnecessary and

---

[3] *Peter v. Wedl*, 155 F.3d 992, 996 (8th Cir. 1998).

[4] Fed. R. Civ. P. 56(a), made applicable here by Fed. R. Bankr. P. 7056.

[5] *See, e.g., Isaacs v. Hobbs Tie & Timber Co.,* 282 U.S. 734, 738, 51 S.Ct. 270, 272, 75 L.Ed.2d 645 (1931) (recognizing that valid liens existing at the time of commencement of a bankruptcy proceeding are preserved); *In re Cumberland Molded Prods., LLC*, 431 B.R. 718, 722 (B.A.P. 6th Cir. 2010) ("The extent to which a claim is properly secured in a chapter 7 case is determined as of the petition date.").

[6] *In re Hanson*, 132 B.R. 406 (Bankr. E.D. Mo. 1991) ("As a general matter, a valid pre-petition lien survives bankruptcy even if the obligation that was the basis for the lien is a dischargeable obligation.").

5

may even constitute a violation of the 362 automatic stay provisions of the Bankruptcy Code."[7] Here, it is undisputed that NABC had a contractual security interest in the account funds and that the security interest was perfected by possession as of the petition date.[8] It is also undisputed that NABC's lien survived the bankruptcy filing itself. The parties disagree, however, as to the effect of the turnover on NABC's possessory lien.

NABC does not assert that its possessory lien survived the turnover under Minnesota law – clearly, it did not. Rather, NABC asserts that, by virtue of the Bankruptcy Code's § 542's turnover requirement, and § 362's automatic stay provisions, it was required to immediately turn over the funds to the Trustee and that, pursuant to the United States Supreme Court's decision in *U.S. v. Whiting Pools, Inc.*,[9] its lien was preserved.

---

[7] *In re Chaseley's Foods, Inc.*, 726 F.2d 303, 306 (7th Cir. 1983) (adopting, as modified, the district court's opinion holding that the effectiveness of a properly filed financing statement does not lapse on the expiration of the original financing statement when there is an intervening bankruptcy).

[8] *See* Min. Stat. § 336.9-312(b)(1) ("a security interest in a deposit account may be perfected only by control under section 336.9-314"); § 336.314(a) ("[a] security interest in . . . deposit accounts . . . may be perfected by control of the collateral under . . . section 336.9-104"); § 336.9-104(a)(1) ("[a] secured party has control of a deposit account if . . . the secured party is the bank with which the deposit account is maintained"); and § 336.9-203(a) and (b)(3)(D) ("a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral," which with respect to deposit accounts, occurs when "the secured party has control under section 336.9-104 . . .").

[9] 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

NABC cites several cases holding that a properly perfected lien survives turnover.[10] And, in *Whiting Pools, Inc.*, the United States Supreme Court held that a secured creditor may be compelled under § 542 to turn over collateral in its possession, but that, if the creditor has a properly perfected security interest, such creditor is entitled to "adequate protection" for its interest in the property when it is turned over:

> In effect, § 542 grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.[11]

NABC asserts that *Whiting Pools* mandates that it could seek adequate protection only after turning the money over.[12] Of course, NABC never sought such adequate

---

[10] *See General Elec. Credit Corp. v. Nardulli & Sons, Inc.,* 836 F.2d 184, 192 (3rd Cir. 1988) (holding that, because the creditors had properly perfected liens in equipment prepetition, their rights as a lienholders were superior to those of the trustee as a hypothetical lienholder under § 544); *Goggin v. Division of Labor Law Enforcement of California,* 336 U.S. 118, 119 (1949) (concluding that secured creditor's relinquishment of possession of collateral to bankruptcy trustee did not alter the validity of the creditor's lien); *In re Archer,* 34 B.R. 28, 31 (N.D. Tex. 1983) (concluding that turnover of cash collateral to avoid violation of automatic stay did not extinguish a security interest which was perfected at the time of filing).

[11] *Whiting Pools*, 462 U.S. at 207, 103 S.Ct. at 2313 (footnote omitted).

[12] 462 U.S. at 212, 103 S.Ct. at 2317 ("Section 542(a) simply requires the [creditor] to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.").

protection here. NABC also asserts that, under *Whiting Pools*, its right to adequate protection – *i.e.,* a continuing lien in the money turned over – automatically replaced its possessory lien. However, *Whiting Pools* involved a statutory tax lien, not a possessory lien,[13] so the creditor's lien remained with the property after it was turned over to the Trustee. The situation here – where the creditor's rights are dependent on possession – was later squarely addressed by the Supreme Court in *Citizens Bank of Maryland v. Strumpf*.[14]

Congress preserved a creditor's right to setoff in §§ 553 and § 542(b) of the Bankruptcy Code. In *Strumpf*, the Supreme Court, recognizing that a bank's right to setoff is lost when possession of an account is relinquished, held that a creditor asserting a right of setoff does not violate the automatic stay by temporarily freezing the account and seeking a determination from the court, via a motion for relief from stay or for adequate protection, of the parties' relative rights to the funds.[15]

NABC asserts that *Strumpf* does not apply because it is not asserting its right of setoff, but is relying instead on its rights under its possessory lien, to which, it asserts, §§ 553 and 542(b) do not apply. To emphasize the distinction between its setoff rights and its contractual lien rights, NABC points to *In re Cumberland*,[16]

---

[13] A federal tax lien attaches to property when the tax is assessed and exists regardless of whether a notice of lien has been filed; perfection of an IRS lien "is completed at the time the IRS files its Notice of Tax Lien" and "*a federal tax lien once filed, follows the property of the taxpayer, no matter into whose hands the property goes.*" *Western National Bank, Odessa, Tex. v. U.S.*, 812 F.Supp. 703, 705 (W.D. Tex. 1993) (emphasis added).

[14] 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

[15] *Id.*, 516 U.S. at 19-21, 116 S.Ct. at 289-90.

[16] *In re Cumberland Molded Prods., LLC* 431 B.R. 718 (B.A.P. 6th Cir. 2010).

which NABC describes as "nearly identical" to the case at bar. In that case, the Bankruptcy Appellate Panel for the Sixth Circuit concluded that a bank, holding a perfected security interest in funds in the debtor's deposit account when the bankruptcy case was filed, had priority over the trustee's hypothetical judicial lien under § 544, notwithstanding the bank's postpetition turnover of the deposited funds.[17] Citing *Whiting Pools*, that court distinguished a bank's right to setoff from its rights under a security interest:

> While compliance with a turnover request or the release to the trustee by a creditor holding a secured claim may result in a waiver of the ability to setoff pursuant to § 553 or § 542(b), it is not a waiver of the underlying claim nor an avoidance of the underlying security interest.[18]

However, in every case cited by NABC for the proposition that turnover of funds does not extinguish the lien, including *Cumberland*, the creditor's underlying security interest in account funds (as opposed to any setoff rights) was perfected by the filing of a UCC-1, not possession. Indeed, as stated above, *Whiting Pools* involved a tax lien, which is not a possessory lien. We view this to be a critical distinction because, as opposed to a lien perfected by filing or recording – which is released only upon another affirmative act such as the filing of a release – a possessory lien is, by definition, released when possession of the collateral is relinquished. Thus, even in contrast to *Chaseley's Foods*, where the creditor simply failed to file a continuation statement and did not affirmatively give up its lien post-bankruptcy by, *e.g.*, releasing its lien, NABC did voluntarily and affirmatively release its lien by operation of law when it relinquished possession.

---

[17] 431 B.R. at 724. *See also In re Cordle*, 187 B.R. 1 (Bankr. N.D. Cal. 1995) (holding that a credit union with a security interest perfected by a UCC-1 would not lose its security interest upon turnover).

[18] *Id.* at 725.

In this context, therefore, we view the distinction between a setoff right and a possessory security interest in account funds to be a distinction without a difference since in either situation the creditor's rights in the funds are lost when possession is given up. Indeed, although it declined to decide the issue, the Supreme Court in *Whiting Pools* suggested that the outcome there might be different with a possessory lien when it noted that "if property is pledged to the secured creditor so that the creditor has possession prior to any default, [§] 542(a) may not require turnover."[19]

Taken together, *Whiting Pools* and *Strumpf* provide a roadmap for creditors whose rights in collateral will be relinquished with possession. Although § 542's turnover requirement is self-effectuating and obligates a creditor to turn over collateral upon demand by a trustee, the Supreme Court has said that a creditor in NABC's position – where relinquishment of possession will in and of itself destroy the creditor's rights – may withhold turning the collateral over until the bankruptcy court is able to make a determination as to whether, and to what extent, the creditor is entitled to adequate protection. This procedure approved by the Supreme Court enables a secured creditor to both comply with a trustee's demand for turnover of assets of the estate, as required by *Whiting Pools*, but at the same time preserve its possessory lien in the manner approved in *Strumpf*. These cases properly place the burden on the party wishing to preserve its lien, here NABC, to ask the Court to adequately protect its possessory lien by entering an order providing that such lien continue in the proceeds being turned over. In that way, the trustee and the unsecured creditors may be made aware that the funds being held by the trustee are not available for estate administration and other expenses, without having to go to the expense of filing an action seeking that determination. In this case, as stated, NABC never did seek adequate protection, and waited more than nine months before it sought a court determination that its possessory lien remained in effect after turnover.

---

[19] 462 U.S. at 207 n. 14, 103 S.Ct. at 2315 n. 14.

Indeed, as the Bankruptcy Court pointed out, NABC did assert its lien and setoff rights in the funds when the Trustee made demand. Even without obtaining Court approval, NABC set off over $27,000 to cover an overdraft, and it demanded, and the Trustee agreed, to allow it to keep the $50,000 Holdback Funds for future charge-backs. As the Bankruptcy Court held, NABC itself determined the amount it needed to hold back; there would have been no need to hold back anything if its possessory security interest automatically remained with the funds after it gave up possession.

Finally, NABC asserts on appeal that it did not seek relief from the stay or adequate protection because it was relying on § 552. That statute provides, in essence, that if a creditor's prepetition security interest extends to "proceeds, products, offspring or profits" of its collateral, then the lien extends to such proceeds, products, offspring, and profits received postpetition. The funds at issue here are not proceeds, products, offspring, or profits so § 552 does not apply.

## Conclusion

For the foregoing reasons, the Bankruptcy Court did not err in holding that NABC lost its possessory lien when it turned the Debtor's account funds over to the Trustee without first seeking adequate protection. The Order of the Bankruptcy Court granting summary judgment in favor of the Trustee on NABC's complaint to determine the validity and priority of NABC's lien is, therefore, AFFIRMED.

———————————